PAUL KALTSAS *vs.* DURALITE COMPANY, INC.
(and a companion case[1]).

Suffolk.    October 14, 1976. — November 23, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Contract,* Employment. *Damages,* Mitigation. *Practice, Civil,* Charge to jury.

In two actions for breach of employment contracts, the judge did not err in instructing the jury that they could not consider in mitigation of damages income earned by the plaintiffs from family businesses which they had been accustomed to earn prior to the termination of their contracts. [636-637]

In a civil action, it was within the judge's discretion to refuse to give an instruction requested by the defendant which properly stated the law but gave undue emphasis to certain elements of the case. [637-638]

In an action for breach of employment contracts, evidence of alleged misconduct by the plaintiffs in the course of their employment but prior to the signing of their employment contracts was properly excluded where there was nothing in the record to suggest that such misconduct was the reason for the termination of the contracts. [638]

In an action for breach of an employment contract, the employer had the burden of proof on the issue of mitigation of damages. [639-640]

CONTRACT. Two writs in the Superior Court dated February 10, 1970.

The cases were heard by *Mitchell,* J., on an auditor's report.

*Douglas G. Moxham* for the defendant.
*Burton Chandler* for Paul Kaltsas.
*Mel L. Greenberg* for James Kaltsas.

HALE, C.J.    On February 10, 1970, James Kaltsas and Paul Kaltsas instituted separate actions against Prest-Wheel, Inc. (Prest-Wheel), seeking damages for breaches of employment contracts. During the pendency of this liti-

---

[1] James Kaltsas *vs.* Duralite Company, Inc.

gation, Prest-Wheel merged with a corporation known as Duralite Company, Inc. (Duralite), and Duralite was substituted as defendant in each case. The actions were consolidated for trial and referred to an auditor,[2] whose findings of fact were not to be final. The auditor filed a report reciting findings of breaches by the defendant and damages in the amount of $99,263.89 in favor of Paul Kaltsas and $127,263.89 in favor of James Kaltsas. The cases were thereafter tried before a jury, which returned verdicts for each of the plaintiffs in amounts identical to those found by the auditor. Judgments were entered on the verdicts on March 27, 1975. Following the denial of a motion for a new trial in each case, the defendant appealed.

The facts do not appear to be in dispute. Prior to August, 1968, James and Paul Kaltsas and their brother George owned all the capital stock of Prest-Wheel, a manufacturer of lawn furniture in Massachusetts. After extensive negotiations, James, Paul, and George Kaltsas entered into a written agreement, dated September 4, 1968, by which they transferred all their shares of stock in Prest-Wheel to Giffen Industries in exchange for shares of stock in Giffen. At the same time the brothers executed the written employment agreements with Prest-Wheel which are the subjects of these actions. Each contract was for a term of five years, with compensation at the rate of $35,000 a year. Each contract also recited that during its term the brother was not to engage in any other business activity, except that it permitted him to devote not more than twenty hours a month to other noncompeting businesses in which he had been engaged prior to the date of the contract. The contract also specifically prohibited him from participating in competing businesses during its term.

James, George and Paul Kaltsas worked for Prest-Wheel from the time of signing the contracts until December 19, 1969, when they were discharged and their contracts were terminated by Prest-Wheel. None of the

---

[2] Now called a master under the Massachusetts Rules of Civil Procedure. Since the record uses the term "auditor" we shall continue to use that term herein.

brothers thereafter received any compensation from the company.[3] Additional findings of the auditor and other evidence at trial are discussed in more detail in the course of this opinion.

The defendant contends that the judge erred in giving certain instructions, in failing to give others, and in excluding certain evidence. We deal with each contention separately.

1. The defendant argues that the judge erred in giving the following jury instruction: "... salaries or other income earned by the plaintiffs from family businesses which they have been accustomed to earning prior to the termination of their employment contract[s] and for which they performed minimal services, cannot be considered in mitigating or diminishing damages."

It was found by the auditor that both James and Paul had, both before and during the term of their employment with Prest-Wheel, performed services for several family businesses on a part-time or occasional basis. The auditor also found that neither James nor Paul had spent more time in these activities after termination than he had at any previous time, either before or during the term of his contract. Each plaintiff's income prior to discharge included the $35,000 salary provided for by his contract, as well as earnings from the other businesses. The record before us does not indicate the amount of those earnings after the termination. The defendant contends that the instruction given was an incorrect statement of the law and misled the jury into concluding that they could not consider in mitigation of damages any income which James or Paul Kaltsas earned or could have earned from a family business after termination of their contracts. But we construe this charge as properly instructing the jurors that they were not to deduct from the damages otherwise recoverable the earnings from family businesses which had been permitted the plaintiffs by the contracts and which they continued to earn after termination. See *Dixon* v.

---

[3] The action by George Kaltsas against Duralite is not before us.

*Volunteer Co-op. Bank,* 213 Mass. 345 (1913); *Galveston v. Ducie,* 91 Tex. 665, 670-671 (1898); *Smith* v. *Pallay,* 130 Ore. 282, 291-293 (1929); *Atholwood Dev. Co.* v. *Houston,* 179 Md. 441, 447 (1941); *Martin* v. *Board of Educ. of Lincoln County,* 120 W. Va. 621, 624 (1938). Williston, Contracts, § 1359, at 310 (3d ed. 1968). This portion of the charge was given immediately after a detailed instruction on the plaintiffs' duty to mitigate damages and, when read in context, could not have misled the jury.

2. The defendant claims that the judge erred in not instructing the jury in language adapted from *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 7-8 (1908). The requested instruction was: "From all the evidence you consider credible, as well as from the employee's own manner in testifying and other inferences, which you may draw from the appearance of the witness, you may determine whether prompt, reasonable and bona fide efforts to obtain other employment would have been successful, or that by the use of his time in a private business he would have gained much value as to reduce materially the amount which he might otherwise receive from the employer. As jurors you may, if you desire, use your own knowledge of practical affairs or apply your common sense to the consideration of a matter of such common occurrence as securing employment. You may also consider such opinion evidence as you consider credible and helpful. In making your judgment you may consider the value of the employee's services, based upon his appearance, the character of the work he had done and was competent to do and the wages he had received." The defendant claims that the refusal to give this instruction removed from the jury's consideration the question whether the brothers could have devoted more time and effort to one or more of the family businesses, thereby earning additional compensation which could be offset against the damages owed by the defendant.

Refusal to give the requested instruction was not error. Although an accurate paraphrase of the law stated in the cited portion of *Maynard,* the requested instruction was not the only form of words in which the governing legal

principles could be properly stated. The judge adequately instructed the jury on the plaintiffs' obligation to use reasonable, diligent effort to find other employment in order to mitigate damages. He instructed them, among other things, "that where one is under contract for personal services and is discharged, it becomes his duty to dispose of his time in a reasonable way so as to obtain as large a compensation as possible, and to use honest, earnest and intelligent efforts to this end. He cannot voluntarily remain idle and expect to recover the compensation stipulated in the contract from the other party."

The requested instruction would have added nothing to this statement of the law given by the judge, and it might have tended to place undue emphasis on a single aspect of the cases. A judge cannot be compelled to single out particular matters and elements of a case and comment on them in instructions. *Taylor* v. *Creeley*, 257 Mass. 21, 28 (1926). It was within the discretion of the judge to determine whether to refer to parts of the evidence. *Goldman* v. *Mahony*, 354 Mass. 705, 711 (1968). It was clearly within his discretion to determine that the emphasis on the plaintiffs' family businesses would have been disproportionate and unnecessary to a proper determination of the cases. See *Poole* v. *Boston & Maine R.R.* 216 Mass. 12, 15 (1913).

3. The defendant claims that the judge erred in excluding evidence of alleged misconduct by the Kaltsas brothers while they were employed by Prest-Wheel but before the signing of the employment contracts. It offered to prove that both Paul and James Kaltsas, on several occasions prior to their entering into the contracts of employment, had paid for personal items out of corporate funds. But there is nothing in the offer of proof, as it appears on the record before us, which suggests that any prior misappropriation of corporate funds was ever considered as a reason for, or even a contributing factor in, Prest-Wheel's decision to terminate its contract with either plaintiff. Accordingly, the evidence offered was irrelevant and properly excluded.

4. As neither of the two remaining contentions of error

is based on an objection, neither can be raised on appeal. See Rule 51 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974), which provides in relevant part that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

5. The defendant charges as error the denial of its motions for new trial.[4] The decision whether to grant or deny a new trial was within the sound discretion of the trial judge, *Miller* v. *Norton,* 353 Mass. 395, 400-401 (1967), and the appellant must show that there was an abuse of discretion or clear error of law before a new trial will be ordered. *Ibid.* See also *Cohen* v. *Peterson,* 320 Mass. 315 (1946). There is nothing in the record to suggest an abuse of discretion.

The defendant argues that the verdict was not supported by the evidence and was contrary to law because it was shown that the brothers had the ability and opportunity to devote their time to family businesses and elected not to do so. But there is nothing in the record before us to indicate that the defendant introduced evidence demonstrating that there was in fact any opportunity for either Paul or James to increase his earnings from any of the family businesses. The defendant bears the burden of proving that such opportunities existed. *McKenna* v. *Commissioner of Mental Health,* 347 Mass. 674, 677 (1964). See *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. at 6; *Clark* v. *General Cleaning Co. Inc.* 345 Mass. 62, 65 (1962). Even if there was evidence introduced from which the jury could have found that such opportunities existed, the jury were free to believe or disbelieve the evidence presented, and the defendant must show that the verdict was manifestly against the weight of the evidence before

---

[4] Each motion asserted that the damages were excessive and that the verdict was contrary to the law and the evidence.

a new trial will be ordered. *Scannell* v. *Boston Elevated Ry.* 208 Mass. 513 (1911). Thus we find no abuse of discretion in the denial of the motions for new trial.

> *Orders denying motions*
> *for new trial affirmed.*
> *Judgments affirmed.*