MURRAY S. DICKSON *vs.* RIVERSIDE IRON WORKS, INC.[1]

Worcester. December 14, 1977. — February 22, 1978.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Contract*, Construction, Employment. *Damages*, Employment contract.

The merger of a wholly owned subsidiary with its parent corporation, primarily to facilitate financial record keeping, did not constitute a "disposition" of the subsidiary's assets within the terms of a provision in an employment agreement between the plaintiff and the subsidiary providing for termination of the plaintiff's employment in "the event of any sale, liquidation or other disposition" of the subsidiary's assets. [55–57]

In assessing damages for breach of an employment agreement the jury were not required to deduct the amount expected to be earned by the plaintiff in other employment during the year remaining on the term of the contract at the time of trial where the plaintiff had no contract in his new employment and had been promised no job security. [57]

CONTRACT. Writ in the Superior Court dated November 14, 1973.

The action was tried before *Griffin*, J.

*Charles B. Swartwood, III*, for the defendant.

*Douglas G. Moxham* for the plaintiff.

HALE, C.J. This action, based on an "employment contract," was tried to a jury, and at the conclusion of the evidence the judge directed a verdict in favor of the plaintiff on the issue of the defendant's liability on the contract. The jury then assessed damages in the amount of $51,621, and the defendant has appealed. There was no error.

---

[1] The action was originally brought against Star Steel Corporation. Riverside Iron Works, Inc., was later substituted as the defendant.

The evidence was undisputed that on February 2, 1972, the parties executed an employment contract in writing whereby Star Steel Corporation (Star) agreed to employ the plaintiff, Murray S. Dickson (Dickson), for a period of five years at a salary of $27,000, plus ten per cent of Star's net profits. The plaintiff's employment was to cease only if one of four named contingencies should occur. Only one of those four is relevant to this appeal: "[T]his agreement shall terminate and all obligations of the Employer hereunder shall cease . . . (d) [i]n the event of any sale, liquidation or other disposition of all the Employer's capital assets." The contract further provided that the plaintiff would act as Star's vice president and general manager during the period of his employment. He served in those capacities until September, 1973.

Star was a wholly owned subsidiary of Riverside Iron Works, Inc. (Riverside), a New York corporation. On July 24, 1973, all of the outstanding shares of stock in Riverside were sold to Clifford Tibbits and Duane Winters (Tibbits and Winters), who were employees of Riverside. After that sale, Tibbits and Winters were elected as the only members of the boards of directors of both Riverside and Star and were involved in the day to day operations of both. In late August, 1973, they decided to merge Star into Riverside, primarily to avoid the expense of preparing two financial statements and two sets of accounting books. Thereafter, the books of the two companies were consolidated.

On September 11, 1973, Tibbits and Winters terminated the plaintiff's employment. The reason given was that they were closing the plant at Star and setting up a small sales office, controlled from the main office in Gouverneur, New York. Therefore, Dickson's services would no longer be required. Tibbits and Winters also felt that, as they owned both Riverside and Star, it was within their right to terminate Dickson. Riverside, however, in its answer to the plaintiff's declaration asserted its claim that the merger of Star into Riverside constituted an

"other disposition of ... assets" of Star and thus was cause to terminate the contract.

After presentation of all the evidence, the plaintiff moved for a directed verdict on the issue of liability. The judge allowed the motion and made written rulings and an order in which she stated that there was no controverted issue of material fact. She ruled that the interpretation of the written contract was solely a question of law for the court's decision, that the merger was not an "other disposition" of assets justifying termination and that, as no event had occurred which justified termination of the plaintiff's contract, the contract was terminated without cause. The first question before us on appeal is whether the judge erred in directing such a verdict. The only issue raised by the defendant is whether the judge erred as a matter of law in construing the contract as she did.

We must interpret the words in a contract according to their plain meaning. *Forte* v. *Caruso*, 336 Mass. 476, 480 (1957). We must also examine the circumstances surrounding the making of the contract to determine the objective intent of the parties. *Louis Stoico, Inc.* v. *Colonial Dev. Corp.*, 369 Mass. 898, 902 (1976). "The literal interpretation of any word or phrase may be qualified by the context in which it appears, by the general purpose manifested by the entire contract and by the circumstances existing at the time the contract was executed." *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501 (1939), citing *Cohen* v. *Bailly*, 266 Mass. 39, 46 (1929). The defendant does not contend that the merger constituted a "sale or liquidation" of Star's assets. Rather, it contends that the merger was an "other disposition" of Star's assets which, according to the terms of the contract, justified termination of Dickson's employment.

1. We consider first whether the language of the contract supports the defendant's contention, and hold that it does not. The doctrine of ejusdem generis is applicable: "Where general words follow specific words in an enumeration describing the legal subject, the general words

are construed to embrace only objects similar in nature
to those objects enumerated by the preceding specific
words." 2A Sands, Sutherland Statutory Construction
§ 47.17 (4th ed. 1973). See *Federal Maritime Commn.* v.
*Seatrain Lines, Inc.*, 411 U.S. 726, 734 (1973). In a phrase
such as the one at issue "other disposition" must be taken
to signify a disposition of the same general character as
a "sale or liquidation." See *Opinion of the Justices*, 337
Mass. 777, 783 (1958). The merger which occurred be-
tween Star and Riverside was not like a "sale or liquida-
tion," the specific types of disposition enumerated in the
contract. There was no loss of control over Star. Star's
business did not cease, and except for the consolidation of
the financial records of Star and Riverside, the business
was conducted in the same way after as before the mer-
ger.

2. The same result is reached when we look at the
intent of the parties, as manifested by the words of the
contract and the surrounding circumstances, none of
which is in dispute. The management of Star made the
original overture to Dickson, informed him that the com-
pany was in trouble, and asked him to come to work there
to try to improve its financial condition. At the time Dick-
son had a good job with Bethlehem Steel Corporation, was
satisfied with that job, and had no intention of leaving it.
He was concerned about job security and requested a
contract from Star because a change in management was
contemplated there. He did not know the people for
whom he would be working, and he "had no intention of
leaving [Bethlehem] without a contract." All of this was
made known to Star's management, and obviously the
parties did not intend that a corporate reorganization,
totally within the control of the owners, would be an
event sufficient to terminate the contract. The merger in
this case was accomplished under G. L. c. 156B, § 82, and,
as Riverside was the parent corporation and sole stock-
holder of Star, only a vote of the board of directors of
Riverside was required. This "short form" merger can be

accomplished easily and is a common form of corporate reorganization between parent and wholly owned subsidiary. Dickson's clear intention was to protect himself from just such a contingency. Star was willing to give its guarantee of five years' employment because it had determined that it needed Dickson's services. Star's eagerness at the time to employ Dickson is inconsistent with Riverside's present contention concerning its ability to terminate Dickson's employment at any time.

The judge must have considered the above circumstances when she stated in her rulings and order that "[i]f the parties meant to include such a merger as an event terminating [the] [p]laintiff's employment, they should have so specified and would not have relied on the term '[other] disposition of assets.'"

We hold that this merger was not an "other disposition" within the meaning of the employment contract and that Riverside is not relieved of its liability to Dickson.

3. The defendant claims next that the jury's award of damages was excessive and contrary to law. The measure of damages recoverable by an employee wrongfully discharged before the expiration of an employment contract is the wages he would have earned under the contract less what he did in fact earn or in the exercise of proper diligence might have earned in another employment. *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 677 (1964). *Huntoon* v. *Quincy*, 349 Mass. 9, 13 (1965). *Kaltsas* v. *Duralite Co.*, 4 Mass. App. Ct. 634, 639 (1976). The burden of proving either that the employee found or in the exercise of proper diligence could have found other employment is on the employer. In the absence of such proof, the employee is entitled to receive the full amount of his salary under the contract. *Black* v. *School Comm. of Malden*, 365 Mass. 197, 212 (1974). *Kuhlmann* v. *Hy-Crest Ranches, Inc.*, 4 Mass. App. Ct. 542. 546–547 (1976). See also *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 6 (1908).

In this case the evidence was that Dickson would have received $95,625 in salary under the contract if he had continued in Riverside's employ and that he received $40,821 as salary from other employment through February 1, 1976 (the trial was held in January, 1976). At that time, there was still a year remaining on the term of the contract, and Dickson was employed at a salary of $22,000 a year. The defendant contends that the jury should have taken into account in their award the salary that the plaintiff would earn during the next year, if he were to continue his present employment. However, the jury were not required to believe that Dickson would remain at that job. There was evidence that the opposite might be true, that he had no contract and had been promised no job security. In awarding damages the jury were not required to give the defendant any more credit than they gave, for the defendant had the burden of satisfying them that Dickson would continue to earn at his current rate. There was also evidence before the jury that Dickson was entitled to receive ten per cent of Riverside's net profits, although the method of determining the profits was in dispute. Thus it appears to us that the jury's verdict was well within the range of the evidence and was neither excessive nor contrary to law.

*Judgment affirmed.*