**GLOBAL NAPS, INC., Plaintiff,**

v.

**VERIZON NEW ENGLAND, INC., et al., Defendants.**

**C.A. No. 02–11501–MLW.**

United States District Court, D. Massachusetts.

Aug. 18, 2006.

Cameron F. Kerry, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, Jeffrey C. Melick, Global Naps, Inc., Norwood, MA, for Plaintiff.

Bruce P. Beausejour, Verizon Communications Inc., Daniel J. Hammond, Attorney General's Office, Boston, MA, Keefe B. Clemons, Verizon Communications Inc., New York, NY, Scott H. Angstreich, Kellogg, Huber, Hansen, Todd, Evans & Figel PLLC, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

## I. SUMMARY

Global NAPs, Inc. has sued Verizon New England Inc. ("Verizon"), the Massachusetts Department of Telecommunications and Energy (the "DTE" or the "Department") and the Commissioners of the DTE in an attempt to reverse an Order of the DTE interpreting and approving an interconnection agreement between Global NAPs and Verizon because the DTE has construed that agreement as not requiring Verizon to make certain payments to Global NAPs.

In 2004, this court decided, as a matter of first impression, that a prior decision of the Rhode Island Public Utilities Commission (the "RIPUC") interpreting the identical language in another interconnection agreement between Global NAPs and Verizon was entitled to preclusive effect pursuant to the Full Faith and Credit Clause of the United States Constitution. *Global NAPs, Inc. v. Verizon New England, Inc.*, 332 F.Supp.2d 341 (D.Mass.2004). This court, therefore, remanded this matter to the DTE, which had interpreted the meaning and effect of that language differently than the RIPUC. *Id.*

The parties appealed that decision. The First Circuit recognized that "[t]his case raises a new issue of importance under the Telecommunications Act," and determined that it had jurisdiction to decide the parties' cross-appeals. *Global Naps, Inc. v. Massachusetts Department of Telecommunications and Energy*, 427 F.3d 34–35, 41–3 (1st Cir.2005). It then found that the Full Faith and Credit Clause did not require that the RIPUC's interpretation of the disputed language be given preclusive effect. *Id.* at 43–49. Therefore, this court's decision was reversed and the case was remanded for further proceedings.[1]

---

1. Rule 40.1K(2) of the Local Rules of the United States District Court for the District of Massachusetts provides, in pertinent part, that if a pretrial decision is reversed and remanded the case will be assigned to a new judge "unless the [original] judge determines that there will result a substantial savings in the time of the whole court and that there is no reason why, in the interest of justice, fur-

ther proceedings should be conducted before another judge." After the parties asked this court to establish a briefing schedule, this court issued an order explaining why, in view of the complexity of this case, it felt obliged to retain it after remand. *See* December 2, 2005 Order. At an August 10, 2006 hearing the parties confirmed that they did not object to this court retaining this case.

After additional briefing, a lengthy hearing was conducted on August 10, 2006. The parties filed supplementary memoranda the next day.

For the reasons described in detail in this Memorandum, the decision of the DTE is being affirmed. This case presents a question of contract interpretation. It is, therefore, governed by state law. The DTE did not make any error of law in interpreting the interconnection agreement. Therefore, its interpretation of that contract must be upheld unless the DTE's decision was not based on substantial evidence, but rather was arbitrary and capricious. The DTE's decision is supported by substantial evidence and represents a reasonable interpretation of the interconnection agreement. In addition, the arguments that Global NAPs raised for the first time after remand are not properly before the court and, in any event, are without merit. Therefore, judgment is being entered for the DTE and Verizon.

## II. FACTS

The relevant facts are described in detail in this court's decision in *Global NAPs*, 332 F.Supp.2d at 346–59. They are summarized as follows.

In essence, this dispute concerns the amount of compensation that one telephone company, Verizon, owes another, Global NAPs, for calls made by Verizon customers, to their Internet Service Providers ("ISPs"), which were completed by Global NAPs.

As the communications industry has evolved, traditional regional monopolies like Verizon's predecessors (known as "incumbent local exchange carriers" or "ILECs") have entered into contractual agreements with newer, "competing local exchange carriers" ("CLECs") such as Global NAPs because the Telecommunications Act of 1996, Pub.L. No. 104–104, 110

Stat. 56, imposed a duty on ILECs and CLECs to interconnect. These "interconnection agreements" generally define when "reciprocal compensation" is payable to a company that completed a call from a company whose customer initiated the call. Such calls are most frequently to ISPs and are known as "ISP Traffic" or "ISP-bound traffic."

Global NAPs and Verizon first began doing business with each other in Massachusetts in 1997, pursuant to an interconnection agreement whose meaning was litigated in *Global Naps, Inc. v. Verizon–Massachusetts, Inc.*, 226 F.Supp.2d 279 (D.Mass.2002). In that case, Judge Reginald Lindsay remanded the matter to the DTE. *Id.* at 281. The Massachusetts Supreme Judicial Court affirmed the DTE's decision after remand in *MCI WorldCom Communications, Inc. v. Department of Telecommunications and Energy*, 442 Mass. 103, 810 N.E.2d 802 (2004).

In October 1998, the DTE issued an Order requiring the payment of reciprocal compensation for ISP traffic. This decision was based on the DTE's understanding that the Federal Communications Commission (the "FCC") had held that such calls were local traffic for which reciprocal compensation had to be paid.

In July 1998, Global NAPs and Verizon negotiated interconnection agreements to govern their relationships in several other states including Rhode Island. On October 1, 1998, the RIPUC approved that agreement (the "Rhode Island Agreement").

Section 5.7.2.3 of the Rhode Island Agreement is central to this case. It is set forth fully in § III, *infra*. In essence, it provided that Verizon would pay Global NAPs reciprocal compensation for ISP traffic initiated by Verizon customers in Rhode Island until the FCC or a court of

42

competent jurisdiction resolved the question of whether such traffic was local traffic for which reciprocal compensation was due.

On February 26, 1999, the FCC issued an Internet Traffic Order (the "ITO") that essentially held that under the Telecommunications Act ISP traffic was not local traffic subject to the reciprocal compensation, but that interconnection agreements, equitable considerations, or state law or policy might nevertheless require the payment of reciprocal compensation. Thus, while the ITO did not mandate the payments of reciprocal compensation, the FCC acknowledged the possibility that state commissions might do so as a matter of state law or policy.

As a result of the ITO, Verizon stopped paying Global NAPs reciprocal compensation under the Rhode Island Agreement. Global NAPs filed a complaint with the RIPUC. On November 16, 1999, the RIPUC issued a decision holding that: (1) under § 5.7.2.3 of the Rhode Island Agreement Verizon was obligated to pay Global NAPs reciprocal compensation until the FCC *or* a court first resolved the issue of whether such compensation was due; and (2) that the ITO had not resolved the issue within the meaning of the Rhode Island Agreement because the FCC left open the possibility that a state commission would require reciprocal compensation and the RIPUC had not decided whether to do so.

As a result of the February 26, 1999 ITO, the DTE reevaluated its October 1998 decision that ISP traffic constituted local traffic for which reciprocal compensation had to be paid. In May 1999, while not interpreting the contract provisions at issue in the present case, the DTE held that as of February 26, 1999, the date of the ITO, companies in Massachusetts were no longer required to pay reciprocal compensation for ISP traffic.

While the various battles over reciprocal compensation were being fought, Verizon's predecessor companies were pursuing the merger that would result in the new company called Verizon. As a condition of approval of the merger by the FCC on June 16, 2000, CLECs such as Global NAPs were given the right to "opt in" to any interconnection agreement Verizon had entered into. This provision gave Global NAPs the right to adopt the terms of the Rhode Island Agreement for the purposes of determining whether it was entitled to reciprocal compensation for ISP traffic in Massachusetts. In ordering Verizon to permit Global NAPs to adopt the Rhode Island Agreement in Massachusetts and Virginia, the FCC stated that, "only the relevant state commission may ultimately decide whether particular terms of the agreement should be adopted in that state and, if so, what those terms mean." *Global NAPs, Inc. v. Verizon New England, Inc. and Verizon Virginia, Inc.*, 17 FCC Rcd 4031, 4039 (February 28, 2002).

The ITO was appealed. On March 24, 2000, the Court of Appeals for the D.C. Circuit vacated the ITO for want of reasoned decisionmaking and remanded the matter to the FCC.

Based on the D.C. Circuit's decision, Global NAPs asked the DTE to reconsider its May 1999 Order and to reinstate the requirement of reciprocal compensation for ISP traffic. On July 11, 2000, the DTE declined to do so.

On April 27, 2001, the FCC issued its Order on Remand. It again found that ISP traffic was interstate rather than local, and not subject to reciprocal compensation.

The FCC's April 27, 2001 Order on Remand was appealed. On May 3, 2002, the D.C. Circuit remanded, but did not vacate, the FCC's Order on Remand for further

consideration by the FCC. The decision to deny reciprocal compensation was deemed by the FCC to remain in effect.

After the Order on Remand, Verizon again stopped paying reciprocal compensation in Rhode Island. On January 29, 2002, the RIPUC found that the Order on Remand resolved the issue of reciprocal compensation. It rejected Global NAPs' argument that the issue was not resolved because the parties had not as of that time had an opportunity to appeal the Order on Remand.

The original interconnection agreement for Massachusetts between Global NAPs and Verizon expired on May 8, 2000. After the DTE denied Global NAPs' request to reinstate the requirement of reciprocal compensation in Massachusetts, Global NAPs opted into the Rhode Island Agreement for Massachusetts, including § 5.7.2.3, effective July 24, 2000.

This agreement was submitted to the DTE for approval pursuant to 47 U.S.C. § 252(e). However, Verizon asked the DTE to rule, as part of its approval of the Rhode Island Agreement, that it was not liable, under § 5.7.2.3, to pay Global NAPs reciprocal compensation for ISP traffic in Massachusetts.

The parties agree that their obligations after June 14, 2001 are governed by the FCC's Order on Remand. Their dispute is over their obligations for the effective period for Massachusetts before that date. This period begins on July 24, 2000, the day Global NAPs notified Verizon it intended to opt in to the Rhode Island Agreement in Massachusetts.

On June 24, 2002, the DTE issued a decision (D.T.E.02–21) approving the interconnection agreement after finding that § 5.7.2.3 did not require Verizon to pay Global NAPs reciprocal compensation for the relevant period. The DTE rejected

Global NAPs' arguments that the doctrine of collateral estoppel and the Full Faith and Credit Clause required the DTE to adopt the RIPUC's interpretation of § 5.7.2.3 and to find that the February 26, 1999 ITO did not resolve the question of whether reciprocal compensation was due. The First Circuit has affirmed the DTE's decision on this issue. *Global Naps*, 427 F.3d at 49.

The DTE went on to interpret § 5.7.2.3. It found that its meaning was "clear." The DTE held that § 5.7.2.3 provided that the issue of reciprocal compensation would be deemed "resolved" by the FCC's initial decision, the February 26, 1999 ITO, unless a court of competent jurisdiction decided that issue before the FCC did. The DTE rejected Global NAPs' argument that § 5.7.2.3 meant that the issue of reciprocal compensation would not be deemed to be "resolved" until all appeals of the FCC's decision were exhausted.

The DTE held that the February 26, 1999 ITO determined that ISP traffic was not local traffic for which reciprocal compensation was generally due under the Telecommunications Act. The DTE recognized that the ITO provided that an interconnection agreement or a state commission's policy might nevertheless provide for reciprocal compensation. However, it found that the Rhode Island Agreement did not provide a basis for awarding Global NAPs reciprocal compensation in Massachusetts for the relevant period.

The Department described its "precedent [as] stat[ing] that the issue of whether ISP-bound traffic is local traffic and, thus, subject to payment of reciprocal compensation, was resolved in Massachusetts with the issuance of the FCC's Internet Traffic Order in February 1999." Record ("R") at 368. Thus, the Department concluded "[b]y seeking to implement an interconnection agreement in Massachusetts,

Verizon and Global NAPs are bound by our interpretation and application of the Internet Traffic Order in Massachusetts." R. at 369. The DTE rejected Global NAPs' argument that the status of ISP traffic was, at any relevant time, indeterminable in Massachusetts. *Id.*

The First Circuit has characterized the DTE's decision as follows:

> The DTE [found] that the Internet Traffic Order did resolve the issue, but based its finding on its "well established position on the issue of reciprocal compensation." Indeed, as of May 1999, after the Internet Traffic Order had "liberat[ed]" it from its earlier assumption that federal law required reciprocal compensation, the DTE had come to a settled conclusion that reciprocal compensation was not required.

*Global Naps,* 427 F.3d at 45.

The DTE approved the interconnection agreement subject to its interpretation of § 5.7.2.3. After its motion for reconsideration was denied, Global NAPS appealed this decision to this court.

III. ANALYSIS

As explained above, Global NAPs seeks a reversal or remand of the DTE's decision that, pursuant to the interconnection agreement adopted in Massachusetts, Verizon was not required to pay Global NAPs reciprocal compensation for the period from July 24, 2000 to June 14, 2001. That agreement states in its most pertinent part that:

> 5.7.2.3 The parties stipulate that they disagree as to whether traffic that originates on one Party's network and is transmitted to an Internet Service Provider ("ISP") connected to the other Party's network ("ISP Traffic") constitutes Local Traffic as defined herein, and the charges to be assessed in connection with such traffic. The issue of

whether such traffic constitutes Local Traffic on which reciprocal compensation must be paid pursuant to the 1996 Act is presently before the FCC in CCB/CPD 97–30 [the proceeding that produced the February 26, 1999 ITO] and may be before a court of competent jurisdiction. The Parties agree that the decision of the FCC in that proceeding, or [of] such court, shall determine whether such traffic is Local Traffic (as defined herein) and the charges to be assessed in connection with ISP Traffic. If the FCC or such court determines that ISP Traffic is Local Traffic, as defined herein, or otherwise determines that ISP Traffic is subject to reciprocal compensation, it shall be compensated as Local Traffic under this Agreement unless another compensation scheme is required under such FCC or court determination. Until resolution of this issue, [Verizon] agrees to pay [Global NAPs] Reciprocal Compensation for ISP traffic (without conceding that ISP Traffic constitutes Local Traffic or precluding [Verizon's] ability to seek appropriate court review of this issue) pursuant to the Commission's Order in Case 97–C–1275, dated March 19, 1998, as such Order may be modified, changed or reversed.

"Although Section 5.7.2.3 links obligations under the contract to the outcome of certain federal proceedings and, therefore, incorporates federal legal issues, the ultimate question is whether the conditions specified by the state law contract have been met. This is a question of state law." *Global NAPs,* 332 F.Supp.2d at 364 (citing cases).

With regard to the Massachusetts law concerning the interpretation of contracts, the Supreme Judicial Court has explained that, "[t]o ascertain the intent of contracting parties, the court considers the words used by the parties, the agreement taken

as a whole, and the surrounding facts and circumstances." *MCI WorldCom*, 442 Mass. at 112, 810 N.E.2d 802. Similarly, the Massachusetts Appeals Court has written that:

> We must interpret the words in a contract according to their plain meaning. We must also examine the circumstances surrounding the making of the contract to determine the objective intent of the parties. The literal interpretation of any word or phrase may be qualified by the context in which it appears, by the general purpose manifested by the entire contract and by the circumstances existing at the time the contract was executed.

*Dickson v. Riverside Iron Works, Inc.*, 6 Mass.App.Ct. 53, 55, 372 N.E.2d 1302 (1978) (citations and internal quotation marks omitted).

The parties all contend that the meaning of § 5.7.2.3 is clear. However, they disagree on whether it provides that Verizon's obligation to pay reciprocal compensation to Global NAPs was resolved by the FCC's issuance of the ITO on February 26, 1999, or whether it was not resolved prior to June 14, 2001 because the District of Columbia Circuit had vacated that Order, remanded the case, and the FCC's April 27, 2001 Order on Remand was still subject to judicial review.

■ The DTE decided that the February 26, 1999 ITO resolved the issue. In reviewing that decision, which is based on the Massachusetts law of contract interpretation, this court assumes the posture of the Massachusetts Supreme Judicial Court reviewing an agency decision pursuant to Mass. Gen. L. c. 25, § 5. *Global NAPs*, 332 F.Supp.2d at 364. Where, as here, a state agency has made a decision based on state rather than federal law, courts have generally held that "where no error of law exists, the state agency's [ ]

determinations are reviewed under the arbitrary and capricious standard." *Global NAPs, Inc. v. Verizon New England, Inc.*, 396 F.3d 16, 23 n. 8 (1st Cir.2005)(citing cases); *see also Southwestern Bell Tel. Co. v. Public Util. Comm'n of Tex.*, 208 F.3d 475, 487 (5th Cir.2000) (holding that "the [state commission] did not act arbitrarily and capriciously because [it reached] a reasonable interpretation of the interconnection agreement"); *Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc.*, 339 F.3d 428, 433 (6th Cir.2003)(holding that "the question of whether the state commission correctly interpreted the challenged interconnection agreement must ... be analyzed ... under the more deferential arbitrary-and-capricious standard of review"); *Michigan Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 366 (6th Cir.2003)(holding that review of state commission's interpretation of an agreement should be done under an arbitrary and capricious standard); *Global NAPs*, 332 F.Supp.2d at 364.

The Supreme Judicial Court described the applicable standard more fully in the *MCI WorldCom* case to which Global NAPs was a party:

> *Standard of review.* The standard of review for petitions under G.L. c. 25, § 5, is well settled: [A] petition that raises no constitutional questions requires us to review the department's findings to determine only whether there is an error of law.... The burden of proof is on the appealing party to show that the order appealed from is invalid, and we have observed that this burden is heavy.... We shall uphold an agency's decision unless it is based on an error of law, unsupported by substantial evidence, unwarranted by facts found on the record as submitted, arbitrary and capricious, an abuse of discretion, or

otherwise not in accordance with law. G.L. c. 30A, § 14(7). (Citations omitted.) *Massachusetts Inst. of Tech. v. Department of Pub. Utils.*, 425 Mass. 856, 867–868, 684 N.E.2d 585 (1997).

Moreover, where a case involves interpretation of a complex statutory and regulatory framework, "we give great deference to the department's expertise and experience in areas where the Legislature has delegated to it decision making authority." *Stow Mun. Elec. Dep't v. Department of Pub. Utils.*, 426 Mass. 341, 344, 688 N.E.2d 1337 (1997), *quoting Wolf v. Department of Pub. Utils.*, 407 Mass. 363, 367, 553 N.E.2d 922 (1990). Where the FCC has expressly delegated authority to the department, we have accorded deference to the department's interpretation of that delegation. *MCI Telecom. Corp. v. Department of Telecom. & Energy*, 435 Mass. 144, 151, 755 N.E.2d 730 (2001). This case presents a situation that is not merely the usual occasion for deference to a State agency. Here, Congress has explicitly delegated the authority to interpret and enforce interconnection agreements to the department. *See* 47 U.S.C. § 252(e).

*MCI WorldCom,* 442 Mass. at 111–12, 810 N.E.2d 802.

In another Telecommunications Act case, *Town of Amherst v. Omnipoint Communications,* 173 F.3d 9, 16 (1st Cir.1999), the First Circuit relied upon *Penobscot Air Services v. Federal Aviation Administration,* 164 F.3d 713, 718 (1st Cir.1999), which described the analogous federal substantial evidence standard as follows:

[S]ubstantial evidence review is conducted on the record considered as a whole. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The reviewing court must take into ac-count contradictory evidence in the record. But the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

*See also, Nextel Communications of the Mid–Atlantic, Inc. v. Manchester–By–The–Sea,* 115 F.Supp.2d 65, 66 (D.Mass. 2000).

■ As described below, the DTE based its decision that Verizon was not required to pay Global NAPs reciprocal compensation for the period July 24, 2000 to June 14, 2001 on an interpretation of § 5.7.2.3 of the interconnection agreement that involved no error of law. Moreover, its interpretation of the contract was supported by substantial evidence and was not arbitrary and capricious. Accordingly, it must be upheld.

Contrary to Global NAPs' contention, it is evident from the decision that the DTE sought to discern the intent of the parties as manifest in the terms of § 5.7.2.3 of the interconnection agreement. After rejecting Global NAPs' arguments on collateral estoppel and the Full Faith and Credit Clause, "[t]he DTE then turned to the text of the agreement." *Global NAPs,* 332 F.Supp.2d at 357.

More specifically, the DTE's focus on interpreting the terms of the interconnection agreement is reflected in the following statements, among others:

[W]e will examine Section 5.7.2.3, which as stated above in n. 4 [where the section was quoted in full] requires Verizon to pay reciprocal compensation for the termination of ISP-bound traffic "until the resolution of the issue" by the FCC or a court of competent jurisdiction. (R. 0365).

\*     \*     \*     \*     \*     \*

[W]e begin with the language of the interconnection agreement at issue. (R. 0367).

\*     \*     \*     \*     \*     \*

Section 5.7.2.3's meaning is clear: the FCC's determination expressed in [the February 26, 1999 ITO] would decide whether ISP-bound traffic would be compensated as local traffic under the Rhode Island Agreement (R. 0369)

\*     \*     \*     \*     \*     \*

[T]he language of Section 5.7.2.3 of the agreement requires Verizon to compensate Global NAPs for the termination of ISP-bound traffic only until the issue of whether such traffic is "local traffic" is resolved. (R. 0370)

\*     \*     \*     \*     \*     \*

In sum, we determine that the language of Section 5.7.2.3 of the Rhode Island Agreement, when viewed in the light of our precedent, must be interpreted to deny the recovery of reciprocal compensation payments for ISP bound traffic post [the February 26, 1999 ITO]. *Id.*

Therefore, the DTE sought to interpret the plain meaning of the terms of the contract as required by Massachusetts law. *MCI WorldCom*, 442 Mass. at 112, 810 N.E.2d 802; *Dickson*, 6 Mass.App.Ct. at 55, 372 N.E.2d 1302.

The dispute in this case indicates that the meaning of § 5.7.2.3 may not be perfectly "clear" as the DTE found. As described earlier, that section says, in pertinent part, that:

> The issue of whether [ISP Traffic] constitutes Local Traffic on which reciprocal compensation must be paid pursuant to the 1996 Act is presently before the FCC in [the proceeding that produced the February 26, 1999 ITO] and may be before a court of competent jurisdiction. The parties agree that the decision of

the FCC in that proceeding, or [of] such court, shall determine whether such traffic is Local Traffic ... Until resolution of this issue, [Verizon] agrees to pay [Global NAPs] Reciprocal Compensation for ISP traffic (without conceding that ISP Traffic constitutes Local Traffic or precluding [Verizon's] ability to seek appropriate court review of this issue.)

The statement that the relevant issue "may be before a court of competent jurisdiction" is arguably susceptible to more than one meaning. It could mean that in 1998 when the Rhode Island interconnection agreement was entered into the issue was known to be before the FCC and might, without the parties' knowledge, also have been before a court of competent jurisdiction. It could also mean that the parties recognized that Verizon might exercise the right it had reserved expressly in § 5.7.2.3 to seek judicial review while it was obligated by the agreement to pay reciprocal compensation and a court might decide the issue before the FCC did so.

The statement that the issue of reciprocal compensation "may be before a court of competent jurisdiction" could arguably also be an imprecise way of expressing the parties' understanding that the FCC's decision could be appealed and would not be final until those appeals were exhausted, as Global NAPs now contends. If Global NAPs' interpretation were deemed to be correct, the issue of reciprocal compensation was not resolved before June 14, 2001 because the relevant FCC proceeding and related appeals had not been finally concluded.

The DTE did not, however, adopt Global NAPs' interpretation of § 5.7.2.3. Rather, it held that the parties intended that the initial decision of the FCC, or any earlier judicial decision of the question by a court of competent jurisdiction, would resolve the issue of reciprocal compensation.

■ "Language within a contract 'is usually considered ambiguous ... where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.'" *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir.1995) (quoting *Rey v. Lafferty*, 990 F.2d 1379, 1384 (1st Cir.), *cert. denied*, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993)). However, even assuming that § 5.7.2.3 is ambiguous rather than clear, the DTE's interpretation is not clearly erroneous, arbitrary or capricious. Rather, it is supported by substantial evidence and is, therefore, entitled to deference. *MCI WorldCom*, 442 Mass. at 111–12, 810 N.E.2d 802.

■ The circumstances at the time the contract was executed are relevant to its proper interpretation. *Id.* at 112, 810 N.E.2d 802; *Dickson*, 6 Mass.App.Ct. at 55, 372 N.E.2d 1302. When the agreement Global NAPs later adopted was entered into in Rhode Island in July 1998, the parties had a right to seek, pursuant to 47 U.S.C. § 252, arbitration to resolve the dispute concerning whether Global NAPs was entitled to reciprocal compensation.

However, this issue had then been pending before the FCC for nearly 16 months. *See* In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP-bound Traffic, 14 FCC Rcd 3689, ¶ 1 n. 1 (February 26, 1999)(the February 26, 1999 Internet Traffic Order). It was reasonable for the DTE to infer from these circumstances that the original parties intended to agree in July 1998 to a brief, temporary measure concerning reciprocal compensation in anticipation of a decision by the FCC, which was issued about seven months later, in February 1999.

The express language of the interconnection agreement is consistent with this interpretation. It provides that Verizon would pay reciprocal compensation until the FCC or a court of competent jurisdiction resolved the issue. The interconnection agreement does not state that reciprocal compensation would be paid until the FCC rendered a decision and all appeals were exhausted. If this had been what the parties intended, it would have been simple to have stated this explicitly.[2]

2. After the August 10, 2006 hearing Verizon submitted information which is consistent with the conclusion that if the parties intended that appeals would have to be exhausted before Verizon's obligation to pay reciprocal compensation ended, they could have said so clearly. Verizon wrote that:

[I]n a 2003 arbitration between the Verizon and Global NAPs affiliates operating in Pennsylvania, Global NAPs had "proposed ... language that would delay implementation of a change of law until appeals are exhausted, even if the change of law is not subject to a stay"; the Pennsylvania commission rejected that proposal. *See* Opinion and Order, *Petition of Global NAPs South, Inc. for Arbitration Pursuant to 47 U.S.C. § 252(b) of Interconnection Rates, Terms, and Conditions with Verizon Pennsylvania, Inc.*, Docket No. A–310771F7000, 2003 WL 21135672 (Pa. PUC Apr. 21, 2003)

(discussion of Issue 13). Global NAPs made similar proposals in other states in which Verizon and Global NAPs affiliates arbitrated interconnection agreements during that period, including in Florida[1], Massachusetts[2], and Vermont[3], and the state commission in those states also rejected Global NAPs' proposed language.

\*     \*     \*     \*     \*     \*

[1] *See* Final Order on Arbitration, *Global NAPS, Inc.*, PSC–03–0805–FOF–TP, 2003 WL 21658341, \*31 (Fla.P.S.C. July 9, 2003).

[2] *See* Order, *Global NAPs, Inc.*, Docket No. 6742, 2002 WL 32059712, \*18–\*19, \*27 (Vt. P.S.B. Dec.26, 2002).

[3] *See* Opinion, *Petition of Global NAPs, Inc. Pursuant to Section 252(b) of the Telecommunications Act of 1996 for Arbitration To Establish an Interconnection Agreement with Verizon New England, Inc.*, (D.T.E. 02–45,

■ Interpreting the interconnection agreement to mean that the parties would be governed by the FCC's decision, without reference to a possible appeal, is also consistent with the principle of contractual interpretation that all terms of a contract should be read together and each should be assumed to have independent meaning. As the Supreme Judicial Court has written, "[i]t is a canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible." *Tupper v. Hancock,* 319 Mass. 105, 108, 64 N.E.2d 441 (1946) (quotation and citation omitted); *see also McMahon v. Monarch Life Insurance Company,* 345 Mass. 261, 264, 186 N.E.2d 827 (1962); *J.A. Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 795, 494 N.E.2d 374 (1986); *Federal Deposit Insurance Corporation v. Singh,* 977 F.2d 18, 22 (1st Cir.1992); *Interpay, Inc. v. Bigham,* 2002 WL 1998249, *4 (D.Mass.

2002). Section 28.4 of the interconnection agreement provides that if a future decision of a court changed the law in a way that affected either party's rights or obligations concerning reciprocal compensation, that decision would "be deemed to be a modification of a material term that requires immediate, good faith renegotiation between the parties." Section 28.4 (Appendix to Verizon's Motion for Summary Judgment ("App") 54).[3] This provision would have been superfluous if Global NAPs were correct in contending that the obligation to pay reciprocal compensation continued until all appeals were exhausted.

The reasonableness of the DTE's decision that the interconnection agreement expressed the parties' intention that Verizon would pay reciprocal compensation until the FCC or a court of competent jurisdiction first decided the issue is supported by the February 20, 2002 decision of the RIPUC interpreting the same provision. The RIPUC wrote:

---

2002 Mass. PUC LEXIS 65, *108–*111)(Mass. DTE Dec. 12, 2002).
Verizon, August 11, 2006 Letter to the Court (Docket No. 71) at 2.

The court is not relying on this information, in part because Global NAPs did not address it in its own August 11, 2006 submission (Docket No. 72) even though the point was discussed at the August 10, 2006 hearing. However, the information submitted by Verizon is consistent with the view the court developed independently—if the parties intended that Verizon's obligation to pay reciprocal compensation would terminate only after all appeals of the FCC's decision were decided, they could have said so plainly.

3. Section 28.4 states:

In the event any Applicable Law other than the FCC Regulations requires modification of any material term(s) contained in this Agreement, either Party may require a renegotiation of the term(s) that require direct modification as well as any term(s) that are reasonably affected thereby. If neither Party requests a renegotiation or if an Applicable Law requires modification of any non-

material term(s), then the Parties agree to make only the minimum modifications necessary, and the remaining provisions of this Agreement shall remain in full force and effect. For purposes of this subsection 28.4 and without limitation of any other modifications required by Applicable Laws, the Parties agree that any modification required by Applicable Laws (i) to the two-tier Reciprocal Call Termination compensation structure for the transport and termination of Reciprocal Compensation Traffic described in Exhibit A, or (ii) that affects either Party's receipt of reciprocal compensation for the transport and termination of Reciprocal Compensation Traffic, shall be deemed to be a modification of a material term that requires immediate good faith renegotiation between the parties.
"Applicable Law" is defined in § 1.7 of the interconnection agreement. It states:
1.7 "Applicable Laws" or "Applicable Law" means all laws, regulations, and orders applicable to each Party's performance of its obligations hereunder. (App.47).
"Orders" would ordinarily, and properly, be construed to include court orders.

When interpreting a contract provision, the Commission will review the disputed provision to determine if it is clear and unambiguous. After a review of the disputed section of the [Rhode Island Agreement], the Commission has determined that the Parties agreed to disagree as to whether ISP-bound traffic was subject to reciprocal compensation *until* the FCC *or* a court of competent jurisdiction ruled. We find nothing in the disputed language or in [Global NAPs'] previous claims in this docket to suggest that the Parties really meant until the FCC and a court of competent jurisdiction ruled *and* all appeals were exhausted.

*See* Report and Order, Complaint of Global NAPs, Inc. against Bell Atlantic–Rhode Island Regarding Reciprocal Compensation, No. 2967 (R.I.P.U.C. Feb. 20, 2002), (App.113) (emphasis in original). This decision of the RIPUC was not binding on the DTE. *Global Naps*, 427 F.3d at 47–8. However, the fact that another expert agency that has been delegated the authority to interpret and enforce interconnection agreements agrees with the DTE's interpretation of the pertinent provision is added evidence that the DTE's decision was reasonable rather than arbitrary and capricious.

This conclusion is not qualified by the fact that in July 2000, when Verizon adopted the Rhode Island interconnection agreement in Massachusetts by opting into it, the ITO had already been issued on February 26, 1999. There may be some superficial appeal to the argument that the parties should not be found to have intend-ed that the issue of reciprocal compensation in Massachusetts would be resolved by an event that had already occurred. This contention is, however, incorrect.

Global NAPs opted into the Rhode Island Agreement pursuant to 47 U.S.C. § 252(i). The Rhode Island Agreement was negotiated in July 1998 and approved by the RIPUC on October 1, 1998, about four months before the February 26, 1999 ITO. *See* Report and Order, Complaint of Global NAPs, Inc. Against Bell Atlantic–Rhode Island Regarding Reciprocal Compensation, No. 2967 (R.I.P.U.C. Feb. 20, 2002), (App.108). It has been correctly held that "[t]he FCC [has] explained that a carrier opting into an existing agreement takes all of the terms and conditions of the agreement 'including its original expiration date.'" *Bell Atlantic–Delaware, Inc. v. Global Naps South, Inc.,* 77 F.Supp.2d 492, 503 (D.Del.1999).[4]

It is equally true that in adopting the Rhode Island Agreement, Global NAPs also took its starting date, October 1, 1998. Thus, Global NAPs is properly treated as having entered into the Massachusetts interconnection agreement before the February 26, 1999 ITO.

Moreover, when Global NAPs adopted the Rhode Island Agreement in Massachusetts on June 24, 2000, it was uncertain whether the DTE would deem Global NAPs to be entitled to reciprocal compensation from Verizon for Massachusetts ISP Traffic. "Although [in the February 26, 1999 ITO] it concluded that the Act did not mandate the ISP Traffic be subject to reciprocal compensation, the FCC ac-

4. In *Bell Atlantic–Delaware, Inc.,* 77 F.Supp.2d at 503, the court was relying upon a decision in which the FCC wrote that "the carrier opting-into an existing agreement takes all the terms and conditions of that agreement (or the portions of that agreement), including its original expiration date." Memorandum Opinion and Order, Global NAPs South, Inc. Petition for Preemption of the Jurisdiction of the Virginia State Corporation Commission Regarding Interconnection Dispute with Bell–Atlantic–Virginia, 15 FCC Rcd 23318, 23323 n. 27 (1999).

knowledged the possibility that state commissions might still require reciprocal compensation as a matter of state law or policy." *Global Naps*, 332 F.Supp.2d at 351. More specifically, the FCC stated in the ITO, that " 'nothing in this Declaratory Ruling precludes state commissions from determining, pursuant to contractual principles or equitable considerations, that reciprocal compensation is an appropriate interim inter-carrier compensation rule pending completion of the rulemaking we initiate below.' " *Id.* (quoting ITO ¶ 27).

The FCC's reference to "contractual principles" meant that although the Act did not provide for reciprocal compensation, interconnection agreements might provide for such compensation. As the FCC wrote in the ITO, " '[w]here parties have agreed to include [ISP traffic] within their section 251 and 252 interconnection agreements, they are bound by those agreements, as interpreted and enforced by the state commissions.' " *Id.* (quoting ITO ¶ 22).

The DTE properly applied Massachusetts principles of contract interpretation and concluded that in § 5.7.2.3 of the interconnection agreement the parties expressed the intent that the issue of reciprocal compensation would be resolved by what became the February 26, 1999 ITO. Therefore, it held that Verizon was not obligated by contract to pay reciprocal compensation to Global NAPs. As described earlier, this construction of the contract involved no error of law and was based on substantial evidence. It was, therefore, reasonable rather than arbitrary and capricious. Thus, the court must defer to it. *MCI WorldCom*, 442 Mass. at 111–12, 810 N.E.2d 802.

Global NAPs is also not entitled to have this matter reversed or remanded to the DTE based on equitable principles under Massachusetts law. The DTE's decision does not discuss equitable principles. There is, however, no evidence that Global NAPs presented any argument that required it to do so. Moreover, the Supreme Judicial Court addressed a similar issue in the related *MCI WorldCom* case, to which Global NAPs was a party. The Supreme Judicial Court wrote in addressing another interconnection agreement, in language equally applicable here:

> Verizon argues that Global failed to raise quantum merit as a theory of recovery before the department. *See Lincoln v. Personnel Adm'r of the Dep't of Personnel Admin.*, 432 Mass. 208, 213 n. 6, 733 N.E.2d 76 (2000) (argument not raised with Civil Service Commission is waived). But even had the issue been raised, the provisions of the express contract address the disputed issue, and "recovery in quantum merit presupposes that no valid contract covers the subject matter of a dispute." *Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250, 606 N.E.2d 1336 (1993).

*Id.* at 116, 810 N.E.2d 802.

As neither federal law nor the interconnection agreement provided Global NAPs a right to reciprocal compensation, the DTE was entitled to adopt and implement its own policy on this question. *Global NAPs*, 332 F.Supp.2d at 351. As the First Circuit summarized the evolution of events:

> Global NAPs and Verizon's first interconnection agreement in Massachusetts was signed in 1997. *Global NAPs II*, 332 F.Supp.2d at 350. In October 1998, the DTE ruled that FCC precedent bound it to conclude that ISP traffic was subject to reciprocal compensation. *Id.* But after the FCC issued its Internet Traffic Order, the DTE revisited its October 1998 decision. In May 1999, the DTE held that as of February 26, 1999, the date of the Internet Traffic Order,

local exchange carriers in Massachusetts were no longer required to pay reciprocal compensation for ISP-bound traffic. *Id.* at 352. In this order, the DTE referred to the Internet Traffic Order as "liberating," since it had previously felt bound by FCC precedent to treat ISP traffic as local traffic subject to reciprocal compensation under the TCA. *Id. Global Naps,* 427 F.3d at 38–39 (footnotes omitted).

Beginning in May 1999, the DTE exercised its legitimate discretion to make policy and consistently decided that absent a statutory or contractual duty, as a matter of policy Verizon, and others similarly situated, would not be required to pay reciprocal compensation. Thus, it reasonably concluded that the issue of whether ISP traffic required reciprocal compensation was resolved in Massachusetts before July 24, 2000.

Global NAPs raises several new issues on remand, which are not properly before the court.[5] Nevertheless, in the interest of completeness, the court has analyzed them. Each new argument is without merit.

Global NAPs asserts that the DTE approved agreements which required Verizon to pay reciprocal compensation to other CLECs and it is arbitrary and capricious for it to treat Global NAPs differently. However, those agreements between Verizon and PaeTec and Level 3 do not contain the same language as § 5.7.2.3. They contain different, express provisions for the payment of ISP Traffic. As their terms manifest different intentions, it was correct, rather than arbitrary and capricious, for the DTE to interpret them differently.

Moreover, contrary to Global NAPs' contention, the DTE did not decide that it would not allow Global NAPs to receive reciprocal compensation if § 5.7.2.3 provided for it. Rather, the DTE reasonably decided that § 5.7.2.3 manifested the parties' intention that the issuance of the ITO would resolve the issue.

Global NAPs also now argues that § 252(e)(2)(A)(i) of the Telecommunications Act prohibits discriminatory interconnection agreements and has been violated, rendering the DTE decision arbitrary and capricious. However, § 252(e)(2)(A)(i) permits a state commission to reject a negotiated interconnection agreement if the terms of that agreement discriminates against a carrier that is not a party to the agreement.[6] Here, Global NAPs claims that the DTE's interpretation of an approved interconnection agreement discriminates against a party to that agreement. Therefore, § 252(e)(2)(A)(i) is not applicable.

Finally, Global NAPs now asserts that Verizon and the DTE are estopped from claiming that the issue of whether ISP traffic requires reciprocal compensation was resolved by the ITO because of Judge Reginald Lindsay's ruling in *Global Naps*

---

**5.** The remand in this case does not authorize Global NAPs to raise issues that were not presented prior to appeal. *See United States v. Bell,* 988 F.2d 247, 250 (1st Cir.1993) (the mandate "constrained the district court from considering on remand" an issue a party had "from all appearances, deliberately bypassed."). This court possesses "some limited discretion" to consider new issues after remand "in very special circumstances." *Id.* No such special circumstances exist here.

**6.** Section 252(e)(2)(A)(i) states:

The State Commission may only reject (A) an agreement (or any portion thereof) adopted by negotiation under subsection (a) of this section if it finds that (i) the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement.

*v. New England Telephone & Telegraph Inc.*, 226 F.Supp.2d 279 (D.Mass.2002). This claim is without merit.

Global NAPs' estoppel argument is based on the statement in the background section of Judge Lindsay's decision that because the FCC decided in the April 27, 2001 Order on Remand not to "invalidate[ ] previously negotiated interconnection agreements that permitted reciprocal compensation for ISP-bound traffic" the "state of the law was thereby left unsettled, at least as the instant parties are concerned." *Id.* at 289. However, this statement does not resolve the instant case.

■ As this court has written:
[I]n Massachusetts, as under federal law, to invoke collateral estoppel the following requirements must be met: (1) the issue on which preclusive effect is sought must have been actually litigated and determined; (2) the decision must have been a valid and final judgment; (3) the determination must have been essential to the judgment; and (4) the estopped party must have had a full and fair opportunity to litigate the issue. *See Kowalski [v. Gagne*, 914 F.2d 299, 302 (1st Cir.1990) ]; *Martin v. Ring*, 401 Mass. 59, 60–61, 514 N.E.2d 663 (1987); *Massachusetts Property Insurance Underwriting Association v. Norrington*, 395 Mass. 751, 756, 481 N.E.2d 1364 (1985); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 *see also* Restatement (Second) of Judgments § 27 (1982), *cited in, Miles [v. Aetna Casualty and Surety Company*, 412 Mass. 424, 427 n. 2, 589 N.E.2d 314 (1992) ]. Even where these elements are satisfied, however, collateral estoppel does not operate to bar litigation of a claim where, in the period between the initial decision and the subsequent case, a controlling fact has changed. *Montana*, 440 U.S. at

155, 157–58, 99 S.Ct. at 974, 975–76; *Morganelli v. Building Inspector of Canton*, 7 Mass.App. 475, 388 N.E.2d 708, 709 n. 4 (1979).

*South Boston Allied War Veterans Council v. City of Boston*, 875 F.Supp. 891, 908–09 (D.Mass.1995); *see also Plumley v. Southern Container, Inc.*, 303 F.3d 364, 373 (1st Cir.2002). The interconnection agreement Judge Lindsay was addressing did not include the terms of § 5.7.2.3 of the agreement at issue in this case. It is the meaning and import of § 5.7.2.3 that is dispositive here. Therefore, the issue on which preclusive effect is now sought by Global NAPs was not actually litigated and determined by Judge Lindsay.

Indeed, Global NAPs has recently acknowledged that Judge Lindsay's case did not involve the issue at the heart of the instant case. The DTE's decision pursuant to Judge Lindsay's remand was· appealed to the Supreme Judicial court rather than to the United States District Court. *MCI WorldCom*, 442 Mass. at 104, 810 N.E.2d 802. In its August 11, 2006 submission Global NAPs states that:

The court also inquired about the parties' position with respect to the case of *MCI WorldCom, Inc. v. Department of Telecommunications and Energy*, 442 Mass. 103, 810 N.E.2d 802 (2004). That case has nothing in common with the case at bar. In that case, the DTE had interpreted federal law with respect to the obligation to pay reciprocal compensation for ISP-bound traffic in general. The Supreme Judicial Court determined that the DTE "was justified in concluding that under Federal Law, ISP-bound traffic is not within the scope of the reciprocal compensation statute." *Id.* at 114, 810 N.E.2d 802.

However, that is not the issue here. Here, the issue focuses on a specific contractual agreement between the par-

**54**

ties. There was no such contract language similar to § 5.7.2.3 in the *MCI WorldCom* case. The Court simply was not asked the same issue as in this case, and therefore that case has nothing to do with the present one.

Global NAPs, Inc.'s Supplemental Memorandum in Support of its Second Motion for Summary Judgment (Docket No. 72) at 5.

Accordingly, the parties are not collaterally estopped from litigating in this case whether the DTE improperly interpreted § 5.7.2.3 [7]

## IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Verizon's Renewed Motion for Summary Judgment (Docket No. 59) and the DTE's Renewed Motion for Summary Judgment (Docket No. 61) are ALLOWED.

2. Global NAPs' Second Motion for Summary Judgment (Docket No. 56) is DENIED.

3. The DTE's June 24, 2002 decision in D.T.E. 02–21, Global NAPs Inc's Adoption of the Terms of the Interconnection Agreement Between Global NAPs, Inc. and Verizon Rhode Island Pursuant to the Bell Atlantic/GTE Merger Conditions, is AFFIRMED.

4. Judgment shall enter for Verizon and the DTE.

---

**7.** Collateral estoppel also does not exist because the language on which Global NAPs relies is only in the background section of Judge Lindsay's decision and is not essential to it.