J. PETER DOWNING vs. CITY OF LOWELL & others.[1]

No. 97-P-2408.

Middlesex. October 6, 2000. - February 1, 2001.

Present: GREENBERG, KAPLAN, & DUFFLY, JJ.

*Education Reform Act. School and School Committee,* Termination of employment. *Contract,* Employment, School principal. *Due Process of Law,* Employment.

The record of summary judgment in a declaratory proceeding demonstrated that, under the applicable provisions of St. 1993, c. 71, the Education Reform Act of 1993, a school principal's contract was allowed to expire without renewal [782-783], and further that principals were excluded by the act from the group of professional employees entitled to tenured status and concomitant procedural safeguards [783-785].

CIVIL ACTION commenced in the Superior Court Department on June 28, 1995.

The case was heard by *Charles J. Hely,* J., on motions for summary judgment.

*Daniel K. Sherwood (Richard O'Neill, Jr.,* with him) for the plaintiff.

*Daniel R. Wojcik,* Assistant City Solicitor, for the defendants.

GREENBERG, J. A letter from the superintendent of the Lowell schools dated April 12, 1995, informed the plaintiff that his contract as principal of the C.G. McDonough Arts Magnet School would not be renewed at the end of the school year. That letter superseded one sent the previous day, April 11, that purported to dismiss him for cause: inefficiency, insubordination, and conduct unbecoming a principal. The question put is

[1]School Committee of Lowell; George T. Tsapatsaris, superintendent of the Lowell schools; and Robert V. Antonucci, Commissioner of Education. The Commissioner of Education was dismissed from the lawsuit pursuant to a motion for judgment on the pleadings; the plaintiff does not appeal from that ruling.

whether, thus postured, the plaintiff is entitled to the procedural safeguards of G. L. c. 71, § 41, third par., namely, review of the decision by petition for arbitration.[2]

This, in outline, is the contractual setting of the dispute. Sometime in 1963, the plaintiff began employment as a teacher in the Lowell public schools where he achieved tenure and was subsequently appointed by the superintendent to the position of principal. The last contract between them, signed June 29, 1994, covered the period from July 1, 1994, through June 30, 1995. The agreement provided that the plaintiff could be terminated for cause under the statute. On April 11, 1995, the superintendent sent a ten-page letter to the plaintiff notifying him of the decision to dismiss him for cause. On advice of counsel he revoked his decision to dismiss the plaintiff. On the following day the superintendent sent the plaintiff a second letter notifying him of the nonrenewal of his contract effective at the close of the 1995

---

[2]That portion of the statute reads as follows:

"A principal, assistant principal, department head or other supervisor who has served in that position in the public schools of the district for three consecutive years shall not be dismissed or demoted except for good cause. Only a superintendent may dismiss a principal. A principal, assistant principal, department head or other supervisor shall not be dismissed unless he has been furnished with a written notice of intent to dismiss with an explanation of the grounds for the dismissal, and, if he so requests, has been given a reasonable opportunity within *fifteen* days after receiving such notice to review the decision with the superintendent at which meeting such employee may be represented by an attorney or other representative to present information pertaining to the *bases* for the decision and to such employee's status. A principal, assistant principal, department head or other supervisor may seek review of a dismissal or demotion decision by filing a petition with the commissioner for arbitration. Except as provided herein, the procedures for arbitration, and the time allowed for the arbitrator to issue a decision, shall be the same as that in section forty-two. The commissioner shall provide the parties with the names of three arbitrators who are members of the American Arbitration Association. The arbitrators shall be different from those developed pursuant to section forty-two. The parties each shall have the right to strike one of the three arbitrator's names if they are unable to agree upon a single arbitrator from amongst the three." St. 1994, c. 346. (With the exception of the two underlined words, this section is identical to the section as it appears in St. 1993, c. 71, § 43.)

school year.[3] Shortly thereafter, on April 27, 1995, the superintendent's counsel notified the plaintiff's lawyer that the plaintiff was not being dismissed or demoted but, instead, that his contract was not being renewed by the superintendent. More letters ensued pertaining to the plaintiff's demand for arbitration on the basis that the nonrenewal letter was equivalent to dismissal, and, alternatively, that "tenured principals" (he had been a principal for more than three years) whose contracts are not renewed are afforded dismissal-type safeguards under G. L. c. 71, § 41.

The plaintiff filed a complaint in the Superior Court against the defendants seeking a declaratory judgment to that effect. A Superior Court judge, after a hearing on cross motions for summary judgment, allowed the defendants' motion, and the plaintiff has appealed.

1. Prior to June 18, 1993, which was the effective date of St. 1993, c. 71, the Education Reform Act of 1993 (1993 Act), no principal who had served in that position for over three years could be demoted or dismissed without his consent except for cause and only upon a majority vote of the school committee after either a public or private hearing. See *Dolloff* v. *School Comm. of Methuen*, 9 Mass. App. Ct. 502, 503 & n.1 (1980). By June 29, 1994, the date on which the plaintiff signed his last contract, the 1993 Act had come into effect and had eliminated the school committee's involvement as well as a principal's col-

---

[3]General Laws c. 71, § 41, second par., reads as follows:

"School principals, by whatever title their position may be known, shall not be represented in collective bargaining, *but every principal shall have the opportunity to meet and discuss individually the terms and conditions of his employment in his school district with such district's superintendent and may be represented by an attorney or other representative, and shall be employed under written contracts of employment. Such contracts shall be for terms of up to three years in length. Failure of the superintendent to notify a principal of the proposed nonrenewal of his contract at least sixty days prior to the expiration date of such contract shall automatically renew the contract for an additional one year period.*" St. 1994, c. 346. (Only that segment of the first sentence that is not underlined also appears in identical form in St. 1993, c. 71, § 43. The 1993 Act does state that "[s]chool principals may enter into individual employment contracts with the districts that employ them concerning the terms and conditions of their employment.")

lective bargaining rights. Instead, principals, like superintendents, and other management personnel within the system, were reclassified as contractual employees. In 1995, some additional changes pertaining to school principals (1995 revisions) went into effect. See note 3, *supra.*

2. The plaintiff bases his claim on the ground that he was "dismissed" and rejects the superintendent's assertion that his contract was simply allowed to expire without renewal. Both the applicable provisions of the 1993 Act and the 1995 revisions explicitly refer to principals as contractual employees providing .insulation against dismissal except for "good cause." These safeguards do not apply should a contract simply expire. A dismissal is not the same as a nonrenewal of a contract. See *Costello* v. *School Comm. of Chelsea*, 27 Mass. App. Ct. 822, 826 (1989) (holding that "removal" or "discharge" from continuing employment is distinct from a failure to rehire an employee who is subject to annual renomination and reappointment). Thus, a principal under a one-year, or even a three-year, contract is guaranteed protection in the event of a dismissal only when a superintendent seeks to terminate the employment relationship prior to the expiration of the contractual period. To hold otherwise would grant principals de facto tenure and frustrate the Legislature's intent of limiting appointments to fixed terms. Cf. *Porrell* v. *School Comm. of Wayland*, 45 Mass. App. Ct. 23, 25 (1998), citing *School Comm. of Natick* v. *Education Assn. of Natick*, 423 Mass. 34, 38 (1996) (finding no de facto tenure for contractually employed coaches).

The plaintiff argues that, because the 1993 Act (in effect on the date he signed his most recent contract) does not mention "nonrenewal," dismissal is the only possible means of terminating a principal. Even though the 1995 revisions had been approved at the time he received notice of nonrenewal of his contract, he contends that the change was substantive for purposes of G. L. c. 71, § 41, and was therefore only applicable to contracts signed after the revisions went into effect. While it is true that the 1995 revisions explicitly address "nonrenewal" (by mandating sixty-day notice to a nonrenewed principal, see note 3, *supra*), this addition does not mean that the option of "nonrenewal" was precluded under the 1993 Act. The effect of the 1995 revisions is to provide principals with additional rights, rather than to introduce a new, previously unavailable termination option of "nonrenewal." The introduction of specific

safeguards surrounding nonrenewal in the 1995 revisions strengthens the defendants' argument that the Legislature envisioned two different scenarios, one passive (by expiration of contract) and the other active (by dismissal or demotion). Each alternative triggers its own distinct procedural safeguards: for nonrenewal, notice is required, and for dismissal, just cause and arbitration. While the 1995 revisions made explicit the notice to which a principal is entitled before a contract could effectively not be renewed, which sixty-day notice requirement was satisfied in the instant case, they did not negate a preexisting distinction between active and passive termination. Thus, the issue of the statute's nonretroactivity is immaterial to the plaintiff's case.[4]

3. The plaintiff also argues that principals who have served as teachers for more than three consecutive years should be afforded the same protections as those offered to professional teachers. The plaintiff is correct that, in substituting "professional teacher status" for the earlier "tenure" status, the 1993 Act creates specific procedural safeguards that professional teachers enjoy prior to a dismissal. See G. L. c. 71, §§ 41, 42. Section 41, however, excludes principals from the listed professional employees entitled to that particular status.[5] Thus, the plaintiff's argument turns on whether these safeguards are applicable to contractual employees who have incidentally achieved professional teacher status prior to or concurrent with their role as principals or other positions that are not defined as "teachers." The plaintiff relies on a case decided before the passage of the 1993 Act which holds that the earlier tenure statute's reference to "teachers" applies to school principals. See, e.g., *McCartin* v. *School Comm. of Lowell*, 322 Mass. 624, 627 (1948). This analogy might make sense were it not for the fact that the 1993 Act was by definition intended to "reform" education in Massachusetts and specifically redefines the role of

---

[4]Statute 1994, c. 346, was approved on January 13, 1995, and took effect four days prior to the notice of nonrenewal, but subsequent to the plaintiff's last contract. He argues that the amendment creates "substantive rights" and, therefore, should not be applied retroactively, citing *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977).

[5]General Laws c. 71, § 41, confers professional teacher status on a "teacher, school librarian, school adjustment counsellor, [school social worker], or school psychologist who has served in the public schools of a school district for three consecutive years." St. 1993, c. 71, § 43. The words "school social worker" were added by St. 1995, c. 209, § 3.

school principals as managerial in nature. See G. L. c. 71, § 59B, as appearing in St. 1993, c. 71, § 53. The title of the 1993 Act itself negates the plaintiff's argument that the court should defer to the "long history of the statute."

From the language of the 1993 Act, its legislative history, and the context of G. L. c. 71, § 41, it appears that the plaintiff's argument to extend teacher protections to principals is untenable. In the very first sentence of the section, principals are excluded from the list of professionals who are considered "teachers" entitled to professional status (i.e., tenure) under G. L. c. 71, § 42. A number of provisions within the statute distinguish principals from teachers. While teachers may be represented by collective bargaining, principals may not. See G. L. c. 71, § 41, second par. (both the 1993 Act and the 1995 revisions). Because they hire and fire teachers, principals are logically distinct from other school personnel (teachers and other staff) and enjoy different rights and responsibilities. Our conclusion is also informed by § 53 of the 1993 Act, amending G. L. c. 71, § 59B, which made a variety of changes relating to the responsibilities of the principal and vests exclusive responsibility for hiring of all teachers and other instructional personnel in the hands of principals. Principals became integral members of the management team of the school district and could no longer be considered "superior teachers" as they were under the previous cases. See, e.g., *McDevitt* v. *School Comm. of Malden*, 298 Mass. 213, 214 (1937); *McCartin*, 322 Mass. at 628; *Rantz* v. *School Comm. of Peabody*, 396 Mass. 383, 386 (1985). Under the 1993 Act, teachers are only rehired annually until they achieve professional teacher status, at which point they can only be dismissed or demoted for cause. In contrast, principals are employed pursuant to employment contracts. See G. L. c. 71, § 41, second par. (both versions; note 3, *supra*).

The plaintiff argues that we should not interpret G. L. c. 71, § 41, to give principals "fewer rights to continued employment than first year teachers." The plaintiff, as one who has achieved professional teacher status, retained his right to the procedural safeguards he sought insofar as he wished to return to teaching. This, however, is not the relief that the plaintiff requests. The superintendent denied the plaintiff's right to procedural safeguards only for the nonrenewal of his contract as a principal and not as a teacher.

Finally, the contention that the plaintiff's due process rights

were violated is without merit. Under the statutory scheme, a principal serving under contract does not have a constitutionally protected property interest in his employment. See *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. 545, 549 (1991); *Fontana* v. *Commissioner of the Metropolitan Dist. Commn.*, 34 Mass. App. Ct. 63, 69 (1993).

*Judgment affirmed.*