ANTHONY T. POLITO *vs.* SCHOOL COMMITTEE OF PEABODY.

No. 06-P-606.

Essex. January 8, 2007. - June 22, 2007.

Present: KANTROWITZ, TRAINOR, & KATZMANN, JJ.

*School and School Committee,* Arbitration, Superintendent of schools.

A Superior Court judge properly granted summary judgment to the plaintiff, a
   former assistant superintendent of a municipal school system, on his claim
   that he was entitled to arbitrate whether good cause existed to terminate
   his employment, where he was hired pursuant to a written agreement that
   provided such right throughout the entire contractual term [396-397];
   moreover, allowing arbitration regarding the termination of the plaintiff's
   employment did not contravene public policy concerning tenure as
   established by the Education Reform Act of 1993, St. 1993, c. 71, where
   the plaintiff's rights were grounded entirely in his employment agreement
   and had nothing to do with G. L. c. 71, § 41, governing the termination of
   principals [397-398].

CIVIL ACTION commenced in the Superior Court Department on
April 19, 2005.

The case was heard by *Richard E. Welch, III,* J., on motions
for summary judgment.

*Daniel B. Kulak* for the defendant.

*James F. Lamond* for the plaintiff.

TRAINOR, J. The school committee of Peabody (committee) ap-
peals from a summary judgment declaring that the plaintiff,
Anthony T. Polito, is entitled to arbitrate whether good cause
existed to terminate his services as an assistant superintendent of
the Peabody school system.

*Facts.* Polito was hired in June, 2004, as an assistant super-
intendent of schools in Peabody pursuant to a written agreement
(agreement). The agreement was drafted by the committee and
provided that his employment commenced on July 1, 2004, and
continued until June 30, 2007, a three-year term. Paragraph 4 of
the agreement, entitled "Discharge," states:

"During the term of this Agreement, [Polito] shall be subject to discharge for good cause and shall be entitled to notice and procedural safeguards provided school principals under G. L. c. 71, § 41, including the right to file for arbitration as provided therein. In the event such a filing for arbitration occurs, the parties agree that the arbitration process shall be governed by said G. L. c. 71, § 41, excepting that the arbitrator's remedial authority shall be limited to an award of back pay damages for the balance of the contract term after the discharge and shall not include authority to reinstate [Polito]."

The committee terminated Polito's employment in late 2004. He attempted to invoke the arbitration term contained in the agreement in order to arbitrate whether he had been terminated for "good cause." He wrote to the commissioner of the Department of Education (commissioner), as instructed by G. L. c. 71, § 41 (sometimes referred to as the statute), asking him for a list of arbitrators. In a letter dated December 15, 2004, the commissioner declined to do so. The commissioner reasoned that Polito did not qualify for statutory arbitration under G. L. c. 71, §§ 41 or 42, which provide that various supervisors, such as principals and assistant principals, who have been in their positions for three consecutive years cannot be dismissed or demoted except for good cause, and are entitled to arbitrate dismissal or demotion decisions. The commissioner declined to address whether the position of assistant superintendent was covered by the statute, finding that because Polito had not been in his position for three consecutive years at the time of his termination, he was not eligible for arbitration under the statute.

Prior to signing the agreement, there was no discussion between Polito and the committee about what would happen if the commissioner declined to provide a list of arbitrators. After the commissioner's letter, Polito invited the committee to enter into a process to jointly select an arbitrator to hear the dispute. The committee declined that invitation.

*Discussion.* The parties agree that this dispute is appropriate for resolution by summary judgment.[1] There are no genuine issues of material fact.

---

[1] Summary judgment is appropriate where there are no genuine issues of

The dispute between the parties concerns the interpretation of the "Discharge" provision in the agreement and its relationship to G. L. c. 71, § 41.[2] Polito argues that the "good cause" protection and the right to arbitrate that protection under the agreement was intended to apply from the first day of the employment period. He also argues that the reference to G. L. c. 71, § 41, was intended to incorporate only its procedural and not its substantive provisions. The committee argues, on the other hand, that by referencing G. L. c. 71, § 41, the parties intended to incorporate both its procedural and substantive provisions. Specifically, the committee maintains that Polito should receive the same procedural and substantive rights offered to school principals under the statute. Polito, according to this argument, would only be entitled to "good cause" protection and the right to arbitrate that protection after three consecutive years of employment in the position of assistant superintendent. Finally, the committee argues that allowing arbitration of Polito's termination would be contrary to public policy, as established by the Education Reform Act of 1993, St. 1993, c. 71, and therefore unenforceable.

---

material fact and where the moving party is entitled to judgment as matter of law. Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983). The moving party bears the burden of demonstrating the absence of a triable issue. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). The evidence must be viewed in the light most favorable to the nonmoving party. *Riley* v. *Presnell*, 409 Mass. 239, 240-241 (1991).

[2]General Laws c. 71, § 41, as amended by St. 1994, c. 346, provides in pertinent part:

> "A principal, assistant principal, department head or other supervisor who has served in that position in the public schools of the district for three consecutive years shall not be dismissed or demoted except for good cause. . . . A principal, assistant principal, department head or other supervisor shall not be dismissed unless he has been furnished with a written notice of intent to dismiss with an explanation of the grounds for the dismissal, and, if he so requests, has been given a reasonable opportunity within fifteen days after receiving such notice to review the decision with the superintendent . . . . A principal, assistant principal, department head or other supervisor may seek review of a dismissal or demotion decision by filing a petition with the commissioner for arbitration. . . . The commissioner shall provide the parties with the names of three arbitrators who are members of the American Arbitration Association."

1. *Disputed contract provision.* "We must interpret the words in a contract according to their plain meaning." *Dickson* v. *Riverside Iron Works, Inc.*, 6 Mass. App. Ct. 53, 55 (1978). We are also required to determine the objective intent of the parties in making the contract. *Ibid.* In addition, "[w]e must put ourselves in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter." *deFreitas* v. *Cote*, 342 Mass. 474, 477 (1961), quoting from *McQuade* v. *Springfield Safe Deposit & Trust Co.*, 333 Mass. 229, 233 (1955). We apply general principles of contract law to determine whether the agreement calls for arbitration. *Mugnano-Bornstein* v. *Crowell*, 42 Mass. App. Ct. 347, 350 (1997). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed . . . to submit." *Ibid.*, quoting from *Local 285, Serv. Employees Intl. Union, AFL-CIO* v. *Nonotuck Resource Assocs.*, 64 F.3d 735, 738 (1st Cir. 1995).

The "Discharge" provision provides: *"During the term of this Agreement,* [Polito] shall be subject to discharge for good cause and shall be entitled to notice and procedural safeguards provided school principals under G. L. c. 71, § 41, including the right to file for arbitration as provided therein" (emphasis added). The plain meaning of this provision is that Polito could be discharged only for "good cause" and would have the right to arbitrate the determination of "good cause" from the first day to the last day of the contract term. If we were to construe the "Discharge" provision as providing Polito "good cause" protection and enforcement by arbitration only after he had served three consecutive years in the position, it would render meaningless the phrase, "[d]uring the term of this Agreement." "A contract should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase, because the interpretation should favor a valid and enforceable contract . . . rather than one of no force and effect." *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995). Rendering that phrase meaningless would in turn render the entire provision meaningless, which could hardly have been the intent of the parties.

The committee argues that the parties intended that Polito be

afforded the same rights afforded to school principals under G. L. c. 71, § 41, but this interpretation is not consistent with the language of the "Discharge" provision. Significantly, under the statute, the remedy for a determination that a termination has occurred without "good cause" is reinstatement. Here, the "Discharge" provision specifically removes that power from the arbitrator and allows him only to award money damages, to the extent of unpaid salary. This language clearly evidences an intention of the parties, and particularly the committee as the drafter, to incorporate only certain aspects of G. L. c. 71, § 41, while specifically rejecting others.

The "Discharge" provision directs that the arbitration process shall be governed by G. L. c. 71, § 41. The statute provides that "[t]he commissioner shall provide the parties with the names of three arbitrators who are members of the American Arbitration Association." The commissioner refused to provide the list of arbitrators because he believed that Polito was not entitled to arbitration under the statute. The commissioner's belief, however, does not excuse the committee's obligation to arbitrate Polito's claim. Polito's right to arbitration is grounded in the agreement, not in the statute. "Where the parties to a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances will be supplied by the court." *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 342 (1979). The parties need only directly request the American Arbitration Association to provide a list of member arbitrators and to jointly choose an arbitrator from that list. This method of choosing an arbitrator is not inconsistent with the terms of the agreement, and by resolving this unanticipated procedural gap, the substantive rights of the parties are not adversely affected.[3]

2. *Public policy.* The committee argues that it is against public policy, specifically the Education Reform Act of 1993, to

___

[3]When during the term of a contract, events occur that the parties did not anticipate, we may "supply[] a term omitted from the . . . actual contract" in order to effectuate the parties' contractual intent. *Newfield House, Inc.* v. *Massachusetts Dept. of Pub. Welfare*, 651 F.2d 32, 36 (1st Cir.), cert. denied, 454 U.S. 1114 (1981).

enforce an employment contract that provides an assistant superintendent the right to be discharged only for "good cause" from the first day of his term of employment. The committee relies on *Downing* v. *Lowell,* 50 Mass. App. Ct. 779 (2001), and *Christensen* v. *Kingston Sch. Comm.,* 360 F. Supp. 2d 212 (D. Mass. 2005), neither of which are analogous to the issues before us. *Downing* v. *Lowell, supra* at 782-784, involved the rights of a tenured principal under G. L. c. 71, § 41, while *Christensen* v. *Kingston Sch. Comm., supra* at 216-219, involved a principal who was not tenured. Although the principals in both cases had an employment contract, they were also subject to the procedural and substantive jurisdiction of G. L. c. 71, § 41. Here, Polito's rights are grounded entirely in his agreement and not in the statute.

The committee erroneously conflates the "good cause" protection granted to Polito with that granted to principals under the statute. Under G. L. c. 71, § 41, a principal terminated without "good cause," as determined by the arbitrator, can be reinstated into his position. Polito, on the other hand, can be awarded nothing more than money damages, to the extent of unpaid salary.

The Education Reform Act of 1993 legislated that principals could only attain a limited form of tenure after being employed for three consecutive years. After this initial three-year period, "good cause" protection would allow them to be reinstated to their position for the balance of their then current contract. The "Discharge" provision in the agreement, and specifically Polito's right to arbitration, with its limited remedy, has nothing to do with the public policy concerning tenure contained in the Education Reform Act of 1993. See *Flynn* v. *Boston,* 59 Mass. App. Ct. 490, 493-494 (2003).

*Conclusion.* We have determined that the meaning of the agreement's "Discharge" provision was to provide Polito with the right to be terminated only for "good cause"; that he had the right, by reference, to notice and other procedural safeguards provided principals under G. L. c. 71, § 41; and that he had the right to arbitrate the determination of "good cause" during the entire contractual term. The remedy under such an arbitration is limited to an award of money damages if no "good cause" is found. The parties can jointly choose an appropriate arbitrator

to hear this dispute. The terms of Polito's employment contract are not contrary to the public policy embodied in the Education Reform Act of 1993. The judgment of the Superior Court is affirmed.

*So ordered.*