Wrenn, Daniel M., J.
The plaintiff, Robert L. Maki, Trustee of the Maki Electrical Trust (“Maki”), successor-in-interest to Maki Electrical, Inc., brought this action seeking payment from the defendants, Robert F. Brattan and Nancy J. Brattan (the “Brattans”), alleging breach of their personal guarantees of a promissory note executed by Brattan Industries, Inc. (“Brattan Industries”) in favor of Maki. Maki now moves for summary judgment on the grounds that there are no genuine issue of material fact, so he is *556 entitled to judgment as a matter of law under the personal guarantees. For the following reasons, the plaintiffs motion for summary judgment is DENIED. Furthermore, this Court enters summary judgment in favor of the defendants pursuant to Mass.R.Civ.P. 56(c).
BACKGROUND
On March 17, 2003, Brattan Industries executed and delivered a promissory note (the “Note”) in favor of MaM Electrical, Inc. in the original principal amount of $750,000.00. On October 8, 2008, the plaintiff and defendants agreed to increase the Note to $880,663.00 and executed a new amended and restated promissory note (the “Maki Note”) in that amount. The Brattans reaffirmed their obligations as guarantors of the Maki Note.
On March 17, 2003, Brattan Industries executed another promissory note. This note, in the amount of $1,500,000.00 (the “CIT Note”), was in favor of CIT Small Business Lending Corporation (“CIT”). In connection with the CIT Note, Brattan Industries executed a Standby Creditor’s Agreement with Robert Maki which provided that payments under the Maki Note were subordinated to Brattan Industries’ obligations under the CIT Note.
On October 5, 2004, Brattan Industries executed a $950,000.00 promissory note in favor of Sovereign Bank (the “Sovereign Note”) which was personally guaranteed by the Brattans. In connection with the Sovereign Note, Maki executed a Subordination Agreement in which Maki agreed to subordinate any debt under the Maki Note to Brattan Industries’ debt under the Sovereign Note. Section 2(a) of the Subordination Agreement provides, in pertinent part:
To the extent and in the manner provided in this Agreement, the payment of any Subordinated Debt [to Maki] is and shall be expressly subordinated and junior in right of payment to the prior payment in full of all [Sovereign] Bank Debt, and the Subordinated Debt is hereby subordinated as a claim against the Borrower, any of its subsidiaries, any guarantor of the Bank Debt or any of their respective assets to the prior payment in full of the Bank Debt. . .
Section 4 provides, “Nothing herein is intended to nor shall anything contained herein prohibit the Subordinated Creditor from exercising any of its rights and remedies with respect to any guarantor of the Subordinated Debt or any collateral given by such guarantor.”
The Subordination Agreement also defines the relevant terms of Section 2(a) and Section 4. Under the Agreement, “Bank Debt means all Indebtedness of the Borrower to the Bank.” Subordinated Debt is defined as “all Indebtedness of [Brattan Industries] to [Maki] evidenced by the [Maki Note].”
On May 8, 2008, CIT notified Maki that it was exercising its right under the Standby Agreement and instructing Brattan Industries to cease making payments under the Maki Note until June 1, 2009. Brattan Industries stopped making payments to Maki until June 2009 when it resumed making payments under the Maki Note. On January 26, 2010, CIT notified Maki that it was exercising its rights under the Standby Agreement again and instructing Brattan Industries to cease making payments to Maki until the CIT Note was satisfied in frill. Brattan Industries ceased making any payments to Maki beginning in January of 2010. It has not made any payments under the Maki Note since then.
As of September 2012, the balance under the CIT Note was approximately $777,780.00. The balance under the Sovereign Note was approximately $474,575.00. There remains a balance on the Maki Note.[1]
DISCUSSION
Maki has filed a motion for summary judgment arguing that (1) the defendants are not entitled to enforce the Subordination Agreement against Maki, (2) even if the defendants could enforce the Subordination Agreement against Maki, the terms of the Subordination Agreement allow Maki to bring suit against the defendants as guarantors of the Maki Note, and (3) the Standby Agreement does not restrict Robert Maki, in his capacity as Trustee of the Maki Electrical Trust, from bringing this claim because he executed the agreement in his individual capacity. The defendants oppose Maki’s Motion for Summary Judgment arguing that the Maki Note is not in default because both the Subordination Agreement applying to the Sovereign Note and the Standby Agreement in the CIT Note have suspended Brattan Industries’ obligation to make payments to the plaintiff under the Maki Note. If the Maki Note is not in default, the plaintiff cannot seek payment from the Brattans as the guarantors of the Maki Note.
Under Mass.R.Civ.R 56(c), summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. It is the moving party’s burden to affirmatively demonstrate the absence of a triable issue. Peterson v. Time Inc., 404 Mass. 14, 17 (1989). This burden is satisfied either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Summary judgment, when appropriate, may be rendered against the moving party. Mass.R.Civ.P. 56(c).
I. The Subordination Agreement
There is no triable issue at this time because, under the terms of the Subordination Agreement, Brattan *557 Industries is not in default under the MaM Note. The plain language of Section 2 of the Subordination Agreement provides that all indebtedness of Brattan Industries to Maki under the MaM Note is subordinated as a claim against any guarantor of Sovereign Bank’s Debt. Here, it is undisputed that the defendants are guarantors of the Sovereign Bank debt. Therefore, since the Sovereign Bank debt has not been paid in full, MaM has no claim against the Brattans as guarantors of the Sovereign Note.[2]
Section 4 of the Subordination Agreement can be read in conjunction with Section 2, and contrary to MaM’s assertions, it does not allow MaM to bring a claim against the Brattans as guarantors of the MaM Note. MaM argues that Section 4 of the Subordination Agreement provides an exception to Section 2 and permits MaM to bring his claim against the Brattans as guarantors of the MaM Note despite the subordination. The Brattans contend that given the laws of contract construction, neither section should be ignored, and both sections have a purpose in the agreement.
Words in a contract should be interpreted according to their plain meaning, and the objective intent of the parties in making the contract should be determined. Polito v. School Comm. of Peabody, 69 Mass.App.Ct. 393, 396 (2008). “We must put ourselves in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter.” deFreitas v. Cote, 342 Mass. 474, 477 (1961), quoting from McQuade v. Springfield Safe Deposit & Trust Co., 333 Mass. 229, 233 (1955). “A contract should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase, because the interpretation should favor a valid and enforceable contract . . . rather than one of no force and effect.” Polito, 69 Mass.App.Ct. at 396, quoting Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712, 713 (1995).
Section 4 of the Subordination Agreement is consistent with Section 2 and by its terms does not provide an exception to Section 2. Under the plain meaning of Section 2, MaM has no claim against the Brattans who are guarantors of the Sovereign Note. While Section 4 provides, “Nothing herein is intended to nor shall anything contained herein prohibit the Subordinated Creditor from exercising any of its rights and remedies with respect to any guarantor of the Subordinated Debt,” it does not change the meaning of Section 2 which prohibits MaM from pursuing guarantors of the Sovereign Note. Instead, Section 4 allows MaM to pursue claims against any other guarantor of the MaM Note who is not also a guarantor of the Sovereign Note. Interpreting the two provisions as MaM proposes would render Section 2 meaningless which could not have been the intent of the parties when drafting the agreement.[3] Because Section 2 provides that indebtness under the MaM Note is subordinated to that under the Sovereign Note and the Sovereign Note has not been satisfied in full, the MaM Note is not in default. MaM has no grounds to pursue a claim against the Brattans as guarantors of both notes.
II. The Standby Agreement
Maki’s claim against the Brattans has also not ripened because the terms of the Standby Agreement on the CIT Note have suspended Brattan Industries’ obligation to make payments on the MaM Note until the CIT Note is paid in full. It is undisputed that on January 26, 2010, CIT notified MaM that it was exercising its right under the Standby Agreement to instruct Brattan Industries to cease making payments under the Maki Note until the CIT was satisfied. MaM argues that the Standby Agreement lists the Standby Creditor as Robert MaM in his individual capacity. Therefore, MaM, in his capacity as Trustee of MaM Electrical Trust, is not restricted under the Standby Agreement from pursuing a claim against the Brattans as guarantors of the MaM Note.
It is clear from the plain language of the Standby Agreement that it was the parties’ intent that Brattan Industries not be held in default for nonpayment of the MaM Note until the CIT Note was satisfied. Failing to include “trustee” after Robert MaM’s name as the Standby Creditor does not make the agreement unenforceable as the undisputed language of the agreement shows that the parties clearly intended the agreement to be enforceable against MaM in his capacity as trustee when they entered into the agreement. Therefore, under the provisions of the Standby Agreement, the MaM Note is not in default and MaM cannot bring this claim against the Brattans as guarantors of the Note.
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment is DENIED. The Court enters summary judgment in favor of the defendants pursuant to Mass.R.Civ.P. 56(c). The plaintiffs complaintis hereby DISMISSED without prejudice.

 The parties dispute the amount still owed on the Maki Note, but for the purposes of this motion, the balance on the Maki Note is not a material fact.

 Maki’s argument that the Brattans are neither parties to the Subordination Agreement nor third-party beneficiaries under the terms of the Agreement is unfounded since the Subordination Agreement specifically applied to the Brattans as guarantors, and under its terms, the Maki Note is not in default.

 Maki’s argument that the language in Section 4 governs because it is more specific than the language in Section 2 is without merit.