DOUGLAS G. BAILEY[1] *vs.* ASTRA TECH, INC., & others;[2]
ROBERT G. STOCKARD[3] & others,[4] third-party defendants.

No. 12-P-478.

Suffolk. October 10, 2012. - December 4, 2013.

Present: KAFKER, COHEN, & TRAINOR, JJ.

*Agency,* Agent's contract, Scope of authority or employment. *Contract,* Settlement agreement, Construction of contract, Contract clause, Merger. *Escrow.*

In a civil action brought in the Superior Court by an agent of the former shareholders of a company acquired through merger by the defendant corporation, in which the agent sought a judgment declaring that the defendant was not entitled to indemnification from the shareholders' escrow fund established during the merger, the judge did not err in approving a settlement agreement between the corporation and certain former shareholders, and in ordering the distribution of certain of the escrow funds, where the parties' escrow agreement permitted the shareholders to seek approval of their settlement [594-595]; where the parties' merger agreement did not grant the agent the exclusive right to negotiate with the corporation [595-598]; where the agent's agency was not irrevocable, given that the agent did not possess a power coupled with an interest in the escrow fund, and that he suffered no economic prejudice from the settlement [598-601]; and where nothing in the agreements abrogated the shareholders' common-law rights as principals to revoke the agent's actual authority and to negotiate the settlement on their own behalf [601-602].


CIVIL ACTION commenced in the Superior Court Department on January 13, 2009.

[1]As shareholders' agent of the shareholders of Atlantis Components, Inc.

[2]Foley & Lardner LLP and Charles R. Dougherty.

[3]Individually & as securityholder of Atlantis Components, Inc.

[4]ABV Holding Company 3 LLC; ABV Holding Company 4 LLC; ABV Holding Company 5 LLC; ABV Holding Company 8 LLC; ABV Holding Company 11 LLC; Douglas Bailey; Gerald Bloom; Brookwood Partners; John D. Chambliss; CID Equity Capital VIII LP; Keith Cooper; Heron Capital Venture Fund 1 LP; Ironwood Equity Fund LP; Peter Laimins; Life Sciences Opportunities (Institutional) Fund II, LP; Life Sciences Opportunities Fund II, LP; Richard E. Mastromatteo; H. Robert Moorehead; Richard H. Oedel; William O'Neill; Orlene Shimberg; Steven Shimberg; Tolkoff Family LP II; VIMAC AC LP; VIMAC AC2 LP; VIMAC AC3 LP; VIMAC Early Stage Fund LP; VIMAC ESF Annex Fund LP; and Arnold Watkin.

A motion for approval of a settlement agreement was heard by *Judith Fabricant,* J., and entry of a separate and final judgment was ordered by her.

*Steven M. Cowley* for the plaintiff.

*Harvey E. Bines* for CID Equity Capital VIII, LP, & others.

*Richard D. Batchelder, Jr.,* for Astra Tech, Inc.

TRAINOR, J. Douglas G. Bailey, as shareholders' agent (shareholders' agent) of the shareholders of Atlantis Components, Inc. (Atlantis), appeals from a judgment of the Superior Court that (1) approved the settlement between Astra Tech, Inc. (Astra Tech), and a group of former shareholders of Atlantis (settling shareholders), and (2) ordered distribution of the settling shareholders' proportional share of an escrow fund. The only issue before us is whether the settling shareholders had the power to negotiate this settlement with Astra Tech. Claiming that they do not have this authority, the shareholders' agent makes three arguments: first, that there is no procedural mechanism that allows the settling shareholders to settle with Astra Tech; second, that under the merger agreement, he has the exclusive right to negotiate with Astra Tech; and third, that his agency is irrevocable because he has a power coupled with an interest. We reject these arguments and affirm the judgment of the Superior Court.

*Background.* In October of 2007, Astra Tech acquired Atlantis by a stock purchase merger for $71 million.[5] As is common, the parties placed a portion ($6.3 million) of the purchase price into an escrow fund, which would be disbursed to the former Atlantis shareholders on a pro rata basis on December 31, 2008, the release date. The escrow fund's purpose was to indemnify Astra Tech if it paid any claims asserted against Atlantis after the closing date but before the release date. The merger agreement designated a shareholders' agent to serve as the representative of the former Atlantis shareholders.[6] It was the shareholders' agent's duty either to approve Astra Tech's indemnification claim on the escrow fund or to challenge it. The merger agreement

---

[5]The merger agreement was executed on September 26, 2007, and the deal was consummated on October 9, 2007.

[6]Douglas G. Bailey became the shareholders' agent in March, 2009. He replaced Robert G. Stockard, the original shareholders' agent and former chief executive officer of Atlantis.

also created a $100,000 representative's fund, from which the shareholders' agent would be reimbursed for fees, expenses, and costs incurred while performing his duties as shareholders' agent.

In a letter to Atlantis dated August 23, 2007 (about one month before execution of the merger agreement), Atlantis's competitor, Nobel Biocare USA, LLC (Nobel), alleged that Atlantis was infringing on Nobel's patents.[7] In a letter dated six days later, Atlantis denied Nobel's allegations, and on September 6, 2007, Astra Tech was informed of the Nobel claim. In a letter to Atlantis dated September 12, 2007, Nobel reiterated its patent infringement claim and attempted to refute Atlantis's defenses. Robert G. Stockard, Atlantis's chief executive officer, never disclosed this second letter, and Astra Tech did not learn of it until October 19, 2007. Alleging fraudulent and intentional misrepresentation against Atlantis for failing to disclose the September 12 letter, Astra Tech made an indemnification claim on the escrow fund for $417,992.33.[8,9] After an initial rebuff by the shareholders' agent, Astra Tech provided a formal demand for payment in a letter dated December 30, 2008, one day before the release date of the escrow fund. Because Astra Tech did not yet know the cost of defending the Nobel claim, Astra Tech demanded payment of the entire $6.3 million in the escrow fund. Stockard, the then-shareholders' agent, submitted a notice of contention to Astra Tech's claim, and subsequently filed suit against Astra Tech seeking a declaration that no indemnification was due Astra Tech from the escrow fund. Astra Tech counterclaimed — and brought in numerous third-party defendants, including the settling shareholders — seeking a declaratory

---

[7] Around the same time, Atlantis also became involved in a trademark dispute with Dabi Atlante.

[8] Of that total, Astra Tech submitted an invoice for $373,261.04 in legal expenses from litigating the Nobel claim. Astra Tech also demanded $10,000, its estimated legal fees in a second dispute, the Dabi Atlante trademark issue, see note 7, *supra*. And finally, Astra Tech demanded $34,731.29 for fees and expenses arising out of the merger itself.

[9] The merger agreement provided that only claims in excess of $500,000 could be made; but the $500,000 requirement did not apply to so-called "material claims." Because Astra Tech alleged that Atlantis fraudulently and intentionally misrepresented its position, Astra Tech alleged it was a "material claim" not subject to the $500,000 threshold.

judgment that it was entitled to the funds. Also, alleging fraud, breach of contract, and violation of G. L. c. 93A, Astra Tech sought damages, not limited to the former Atlantis shareholders' proportional share of the escrow funds, directly from the third-party defendants.

As the lawsuit progressed and discovery ensued, Astra Tech's legal expenses, which were compensable from the escrow fund, ballooned to nearly $2.5 million by October of 2010. Faced with potentially high out-of-pocket damages and a rapidly dwindling escrow fund, the settling shareholders opted to settle directly with Astra Tech, using their pro rata share of the escrow fund as payment. After reaching an agreement, the settling shareholders and Astra Tech moved in Superior Court for approval of their settlement. The shareholders' agent opposed the settlement, on the basis that neither the merger agreement nor the escrow agreement permitted the settling shareholders to seek disbursement absent the consent of the shareholders' agent. A judge approved the settlement agreement between Astra Tech and the settling shareholders.

The final settlement agreement, as approved by the judge, required that $2,453,850, i.e., 38.95 percent (the settling shareholders' proportional interest in the escrow fund) be released from the escrow fund. Astra Tech would then release its claims against the settling shareholders for $973,305.18[10] of the released funds. In return, the settling shareholders would receive the remaining $1,480,544.82, to be distributed according to each settling shareholder's pro rata share. The judge then ordered the entry of judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), and dismissed the third-party claims against the settling shareholders. The shareholders' agent appeals.

*Discussion.* The facts here are not in dispute, and the issues generally will be determined by our interpretation of the terms of several agreements. "Because the interpretation of the terms of a contract or agreement is a pure question of law, we exercise de novo review over this issue." *Buchanan* v. *Contributory Retirement Appeal Bd.*, 65 Mass. App. Ct. 244, 247 n.5 (2005).

Resolution of this case requires the interpretation and interplay

---

[10]This figure represents 38.95 percent of Astra Tech's accrued legal fees.

of three contracts between the parties: (1) the escrow agreement between Astra Tech, Atlantis, the shareholders' agent, and the escrow agent; (2) the merger agreement between Astra Tech, Atlantis, and the shareholders' agent; and (3) the settlement agreement between Astra Tech and the settling shareholders. In interpreting these agreements, we are guided by the familiar tenets of contract interpretation. "The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *USM Corp.* v. *Arthur D. Little Sys. Inc.*, 28 Mass. App. Ct. 108, 116 (1989). "We must interpret the words in a contract according to their plain meaning." *Dickson* v. *Riverside Iron Works, Inc.*, 6 Mass. App. Ct. 53, 55 (1978). In addition, "[w]e must put ourselves in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter." *Polito* v. *School Comm. of Peabody*, 69 Mass. App. Ct. 393, 396 (2007), quoting from *deFreitas* v. *Cote*, 342 Mass. 474, 477 (1961).

*Escrow agreement.* The shareholders' agent first claims that no procedural mechanism exists to allow the settling shareholders to seek court approval of their settlement. We disagree because the escrow agreement itself provides such a mechanism.[11] The relevant portion of § 3(c)(iii) reads:

> "Any Disputed Claim and any other dispute which may arise under this Escrow Agreement with respect to the rights of [Astra Tech] or any other Indemnified Party and the Shareholders' Agent or the Company Securityholders to the Escrow Fund shall be settled by mutual agreement of [Astra Tech] and the Shareholders' Agent (evidenced by joint written instructions signed by [Astra Tech] and the Shareholders' Agent and delivered to the Escrow Agent); *provided, however*, that upon receipt of a copy of a final and nonappealable order of a court of competent jurisdiction with respect to payment of all or any portion of the Escrow Fund, . . . the Escrow Agent shall deliver the por-

[11]Section 3 establishes a system for disbursement from the escrow fund: Astra Tech first is to submit a written demand for payment. The shareholders' agent then has fifteen business days to dispute the claim. In addition to providing a procedural mechanism for disbursement, the escrow agreement also governs claims disputed by the shareholders' agent.

tion of the Escrow Fund specified in such award or order to [Astra Tech] or other Indemnified Party and/or the Shareholders' Agent for the benefit of the Company Securityholders as directed in such award or order."

The shareholders' agent contends that this section authorizes only him and Astra Tech to settle disputed claims, and that the court order referenced after the semicolon simply provides the manner of dispute resolution should they fail to settle. That interpretation ignores the plain meaning of the agreement. "The word 'provided' in common speech naturally expresses a qualification, limitation, condition, or an exception respecting the scope and operation of words previously used." *Sears* v. *Childs*, 309 Mass. 337, 345-346 (1941). In conjunction with the word "however," it is clear that the proviso following the semicolon created an exception to the claim resolution procedure outlined prior to the semicolon. This exception to the settlement provisions permits a court of competent jurisdiction to issue an order to disburse funds, and the court's power is not limited to resolving a claim dispute where the shareholders' agent and Astra Tech have failed to settle. Therefore, the escrow agreement provides a mechanism for disbursing the escrow funds in addition to providing a settlement between Astra Tech and the shareholders' agent.[12]

*Merger agreement.* Next, the shareholders' agent contends that under § 8.6(a) and (e) of the merger agreement, he has the exclusive right to negotiate with Astra Tech. Section 8.6(a) provides, in pertinent part:

> "[T]he Shareholders' Agent shall be, and hereby is, appointed and constituted in respect of each Company Securityholder, as his, her or its agent, to act in his, her or its name, place and stead, as such Company Securityholder's attorney-in-fact, as more fully set forth in this Section 8.6. Without limiting the generality of the foregoing, the Shareholders' Agent shall be constituted and appointed as agent for and on behalf of the Company shareholders to

---

[12]This alternative procedure for distribution of escrow funds also anticipates the power of a principal to act on his own behalf even while in a relationship with an agent.

give and receive notices and communications, to authorize delivery to [Astra Tech] of the monies from the Escrow Fund in satisfaction of claims by [Astra Tech] Indemnified Persons against the Escrow Fund, to object to such deliveries, *to agree to, negotiate, enter into settlements and compromises of,* and demand arbitration and comply with orders of courts and awards of arbitrators with respect to such claims, and to take all actions necessary or appropriate in the judgment of the Shareholders' Agent for the accomplishment of the foregoing."[13]

Section 8.6(e) further delineates the actions that may be taken by the shareholders' agent:

"A decision, act, consent or instruction of the Shareholders' Agent shall constitute a decision of all Company shareholders . . . and shall be final, binding and conclusive upon each such Company shareholder, and the Escrow Agent and [Astra Tech] may rely upon any decision, act, consent or instruction of the Shareholders' Agent as being the decision, act, consent or instruction of each and every such Company shareholder."

Read together, these sections clearly entrust the shareholders' agent with broad powers to negotiate and to make decisions for the settling shareholders. The question before us, however, is whether the merger agreement grants the shareholders' agent not just broad powers, but also the *exclusive* right to negotiate, which would bar the settling shareholders from negotiating for themselves.[14] This distinction is significant because, "[u]nless the agent was given an exclusive agency, the principal is free to

---

[13]Section 8.6(a) also provides the method for electing a new shareholders' agent.

[14]The concept of agency, as defined by the common law, acknowledges a consensual relationship between parties, in which one party acts as a representative or on behalf of the other party with power to effect the legal rights and duties of that other party. See generally Restatement (Third) of Agency § 1.01 comment c (2006). Every agency expects the agent to exercise power, the extent of which is usually determined by the circumstances of the agency. *Ibid.* Even an agent holding broad powers, however, holds and exercises those powers as a result of a voluntary conferral by the principal. *Ibid.* We have used the Restatement (Third) of Agency's description of agency principals to develop our agency case law. See, e.g., *MacDonald* v. *Gough,* 326 Mass. 93, 97-98 (1950) (using Restatement to support explanation of power coupled

compete with the agent." Gregory, The Law of Agency and Partnership § 83 (3d ed. 2001).[15]

The shareholders' agent argues that his rights are exclusive because his decisions and acts "constitute a decision of all Company shareholders" and are "final, binding and conclusive upon each such Company Shareholder." Any other construction, according to the shareholders' agent, would render meaningless the words "final" and "conclusive."[16] We disagree with this interpretation. While the use of those words makes actions taken by the shareholders' agent binding on the settling shareholders, the words do not grant him the exclusive right to negotiate. "Conclusive" is defined as "decisive; settling the question." Webster's New Universal Unabridged Dictionary 377 (2d ed. 1983). Likewise, "final" is defined as "decisive; determinative." *Id.* at 687. "Exclusive," on the other hand, is defined as "having the tendency or power to exclude all others." *Id.* at 638. There is no basis in the definitions of "conclusive" or "final" that would lead us to define them as a substitute for "exclusive."

To create an exclusive agency, "the parties must expressly and unambiguously indicate such an intent in the contract." *Bump* v. *Robbins*, 24 Mass. App. Ct. 296, 304 (1987). If the parties had wished to give the shareholders' agent the sole or exclusive authority to negotiate on behalf of the settling share-

with interest); *Kirkpatrick* v. *Boston Mut. Life Ins. Co.*, 393 Mass. 640, 645 (1985) (using Restatement definition of agency relationship); *Haufler* v. *Zotos*, 446 Mass. 489, 498 (2006) (using Restatement explanation of agent's power).

[15]However, even when an agency relationship is stated to be "irrevocable" or "exclusive," the statement does not make it so. "The principal may still revoke, . . . while incurring liability for the breach. It must be remembered that, authority as commonly conceived in an agency setting may always be revoked. . . . It is believed that it should always be within the power of the principal . . . to reassume the control over his own business which he has but delegated to his agent." Gregory, *supra* at § 47.

[16]The shareholders' agent also points to Ballenger *vs.* Applied Digital Solutions, Inc., Del. Chancery Ct., No. 19399, slip op. at 10 (April 24, 2002), where the court held that the stockholders' representatives had "the authority to determine how far to press a dispute over an Earnout issue." But there, the stockholders' representatives and the stockholders were on the same side of the dispute against the acquiring company. *Id.* at 1. Here, the settling shareholders are opposed to the shareholders' agent's position and have directly settled a dispute with the acquiring company.

holders, they could have done so. See, e.g., *Hayes* v. *Gessner*, 315 Mass. 366, 369 (1944) ("By the terms of the policy the defendant had conferred 'the sole right of settlement and defense' upon his insurance company"). See also *Aveta Inc.* v. *Cavallieri*, 23 A.3d 157, 165 (Del. Ch. 2010) ("the Principal Shareholders and each of the other Shareholders signing this Agreement hereby irrevocably designate Roberto L. Bengoa . . . as their representative," quoting from purchase agreement). We will not contort the plain language of the merger agreement to interpret "final, binding and conclusive" as synonymous with "irrevocable" or "exclusive." We conclude that the merger agreement gives the shareholders' agent an express right to negotiate with Astra Tech and to bind the settling shareholders, but not a contractually exclusive right to do so.[17]

*Power coupled with interest.* The shareholders' agent contends that his agency is irrevocable because he has a power coupled with an interest. As we have discussed, under general principles of agency law, the principal may revoke the agent's authority at any time, even if the agreement expressly states that the principal may not revoke. See Restatement (Third) of Agency § 3.10 comment b (2006). But "[i]t is perfectly possible to create by contract an agency power so coupled with an interest that the creator can neither revoke nor control the exercise of the power." *Hayes*, *supra* at 370. When this occurs, the agent is said to have a power coupled with an interest.

A power coupled with an interest is not technically an agency relationship because "it is neither given for, nor exercised for, the benefit of the person who creates it." Restatement (Third) of Agency, *supra* at § 3.12 comment b. In an agency relationship, granting authority to the agent is solely for the benefit of the principal. *Ibid.* When a power is coupled with an interest, the donee holds that power for his own benefit (or for the benefit of a third party), but not for the benefit of the donor. Gregory, *supra* at § 10. Additionally, when a power is coupled with an

[17]As previously stated, even if an agreement creates an agency that is irrevocable or exclusive, the principal still maintains the power to revoke the agreement at any time. Restatement (Third) of Agency § 3.10 & comment b (2006). But such revocation could render the principal liable for breach of contract. Gregory, *supra* at § 47.

interest, the agent (donee of the power) must have a present interest in the property upon which the power is to operate. *Id.* at § 47. It is generally accepted that the "interest" must be ownership of the property itself and it is "this ownership which makes the power irrevocable." *Ibid.* With this relationship in mind, we must determine whether the shareholders' agent here has a power coupled with an interest.

We first consider whether the shareholders' agent has a power in the escrow fund. As discussed *supra*, the shareholders' agent has broad powers under the merger agreement, but he does not have an exclusive or irrevocable power. Under the escrow agreement, his powers are more limited. The escrow agreement makes clear that the escrow agent only may release funds upon agreement by the shareholders' agent and Astra Tech. Thus, this case is unlike other cases where courts have found a power coupled with an interest, as those cases described a donee with unilateral power to affect the property. See, e.g., *Hayes, supra* at 369 (policy providing sole right to agent irrevocable); *MacDonald* v. *Gough*, 326 Mass. 93, 97-98 (1950) (agent appointed by brothers had power coupled with interest). Here, the shareholders' agent does not have unilateral power to control disposition of the escrow fund. Rather, he must reach an agreement with Astra Tech before the escrow agent could be compelled to release the funds. Accordingly, the shareholders' agent does not have sufficient power in the escrow fund to be deemed the donee of a power coupled with an interest.

Nor does the shareholders' agent have an interest in the escrow fund sufficient to create a power coupled with an interest. The common thread running through our cases, going back to Chief Justice Marshall's opinion in *Hunt* v. *Rousmanier*, 21 U.S. (8 Wheat.) 174, 203 (1823), which equated interest with title, is that the agent must have an interest "in the property itself" and "not merely an interest in the proceeds of the property." *Varnum* v. *Meserve*, 8 Allen 158, 159 (1864), citing *Hunt, supra.* "[T]here has been general acceptance of the distinguishing feature of the 'interest' which operates to make the power irrevocable, i.e. ownership. . . . [T]he basic question is whether the holder of the power has such an interest in the subject matter as to enable him to exercise the rights of an owner or part

owner." Gregory, *supra* at § 10.[18] Likewise, our cases have required incidents of ownership before concluding that there was a power coupled with an interest. See *Varnum, supra* ("a mortgage vests the whole legal estate in the mortgagee. . . . The power is to be executed out of the estate conveyed, and is not merely collateral to it"); *Dickinson* v. *Central Natl. Bank,* 129 Mass. 279, 282-283 (1880) (stock certificate issued to owner of shares, with execution of power of attorney, "conferred a power coupled with an interest"); *Mulloney* v. *Black,* 244 Mass. 391, 394 (1923) ("The defendant had a property interest in the money in his hands with a power to dispose of it under the contract"); *MacDonald, supra* ("The purpose of the contract was to protect the interests of the three brothers as heirs at law and next of kin in the estate of their deceased brother").

Here, the shareholders' agent serves two roles. The shareholders elected him to serve as their agent.[19] In addition to representing the interests of all shareholders in the escrow fund, he also, in an individual capacity, is the principal (majority) shareholder in the escrow fund. He certainly has a property interest in the escrow fund in his individual capacity to the extent of his majority interest, but he does not have a property interest in the entire fund in his capacity as shareholders' agent. The critical distinction between an agent and the donee of a power coupled with an interest lies in who receives the benefit of the relationship. In a principal-agent relationship, the principal receives the benefit; for a power coupled with an interest, the benefit inures to the donee himself (or to a third party), but not to the donor. See Gregory, *supra* at § 10. Ultimately, in his capacity as shareholders' agent, he serves for the benefit of the shareholders, and not for his own benefit. That he is also, in his individual capacity, a shareholder does not transform his role under the escrow agreement from an agent to a donee of a power coupled with an interest in the entire escrow fund.

---

[18] The ordinary incidents of agency — such as payment of a commission or a fee — do not constitute a sufficient interest to create a power coupled with an interest. Restatement (Third) of Agency, *supra* at § 3.12 comment b.

[19] Although he is entitled to fees from the representative fund, that is an interest arising from his role as agent. Restatement (Third) of Agency, *supra* at § 3.12 comment b (ordinary incidents of agency — such as payment of a commission or a fee — do not constitute a sufficient interest to create a power coupled with an interest).

Even if we were to assume that the shareholders' agent had a power coupled with an interest in his own shares, the settlement between the settling shareholders and Astra Tech does not affect the rights of any nonsettling shareholders, including the shareholders' agent in his individual capacity. The settlement consists of the 38.95 percent of the escrow fund that would have been distributed to the settling shareholders on the release date. It does not affect the remaining 61.05 percent, which includes the shareholders' agent's individual proportional share. Moreover, in the event of damages in excess of the escrow amount, § 8.2(d) of the merger agreement[20] and paragraph 5 of the settlement agreement[21] expressly prevent Astra Tech from seeking damages from the remaining shareholders (the 61.05 percent) to cover the percentage loss of the settling shareholders. The maximum liability of each shareholder is limited to his pro rata share in any award of damages. Because the shareholders' agent suffers no economic prejudice due to the settlement, he does not have an interest in the 38.95-percent portion of the escrow fund representing the settling shareholders' proportional share. Contrast *MacDonald*, 326 Mass. at 97-98 (contract made by brothers who were heirs of decedent provided sufficient interest to create "power coupled with an interest"). With no interest in the settling shareholders' divisible portion, the shareholders' agent cannot have a power coupled with an interest in the whole escrow fund, and his agency is neither irrevocable nor exclusive.

*Settling shareholders' rights.* Having concluded that the shareholders' agent has neither the exclusive right to negotiate under the merger agreement nor a power coupled with an interest in the entire escrow fund, we must determine whether the settling shareholders had the right to settle with Astra Tech. In the absence of an agreement, the settling shareholders retain their common-law rights as principals. "Notwithstanding any agreement between principal and agent, an agent's actual authority terminates . . . if the principal revokes the agent's actual authority by a manifestation to the agent." Restatement (Third)

---

[20]"In no event shall a Company Securityholder be liable for any amounts in excess of Merger Consideration actually paid to him, her or it."

[21]"Astra Tech . . . will not seek to recover the Settling Shareholders' pro rata share of the Astra Tech Excess Damages from any other person or entity."

of Agency, *supra* at § 3.10. The principal may manifest a revocation of all or part of the agent's authority through implicit conduct. *Id.* at comments b, c. See *Gagnon* v. *Coombs*, 39 Mass. App. Ct. 144, 151 (1995). Because a principal may revoke part of the agent's authority, it follows that a principal may, in the absence of an agreement to the contrary, negotiate on his own behalf without infringing on the agent's ability to perform his duties. "Unless otherwise agreed, a principal is not subject to a general duty to refrain from competition with the agent that does not interfere with the agent's ability to achieve standards set by contract." Restatement (Third) of Agency, *supra* at § 8.13 comment b. As discussed *supra*, nothing in the agreements between the parties abrogated these common-law rights because nothing vested an exclusive or irrevocable right in the shareholders' agent. Therefore, the settling shareholders had the power to negotiate a settlement agreement with Astra Tech.

*Judgment entered August 19, 2011, affirmed.*